COMMONWEALTH *vs.* GEORGE W. ANDERSON.

Middlesex. April 11, 1980. — May 12, 1980.

Present: GREANEY, PERRETTA, & DREBEN, JJ.

*Constitutional Law*, Speedy trial. *Practice, Criminal*, Speedy trial.

A defendant was not denied his constitutional right to a speedy trial by the fact that there was a six-year delay between the issuance of complaints and the date of his trial, where findings were warranted that the defendant's signing of a blank interstate detainer request form as part of his routine processing in connection with incarceration in Florida did not constitute an assertion of his right to a speedy trial on the Massachusetts complaints, that the delay was attributable to the defendant's actions in fleeing the Commonwealth and repeatedly evading the authorities, and that prejudice to the defendant, if any, was not attributable to delay by the Commonwealth. [703-707]

INDICTMENTS found and returned in the Superior Court on May 9, 1978.

A motion for a new trial was heard by *Cross*, J.

*Daniel F. Featherston, Jr.,* for the defendant.

*William L. Pardee,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. The defendant, convicted after a jury trial in the Superior Court of the crimes of rape and assault, contends on this appeal that he has been deprived of his right to a speedy trial as required by the Sixth (by reason of the Fourteenth) Amendment to the United States Constitution and by art. 11 of the Massachusetts Declaration of Rights. He requests that the order denying his motion for a new trial (G. L. c. 278, § 29), based solely on that ground, be reversed, that the convictions and judgments be set aside, and that the matter be remanded to the Superior Court with instructions to dismiss the indictments. We affirm the order.[1]

These are the background facts. The female victim was raped and assaulted in Belmont on October 22, 1972. In the early morning hours of October 28, 1972, the defendant was arrested by the Belmont and Cambridge police and charged with both offenses. He was first booked at the Cambridge police station, where he gave a date of birth of November 18, 1941, and an address of 36 Stearns Road, Belmont. He was later booked again at the Belmont police station, where he gave the police the same information. Following booking, he was interrogated by Inspector William Mahoney of the Belmont police. The defendant told Inspector Mahoney that his date of birth was November 6, 1941; the inspector was unaware of the discrepancy between the date of birth given to the Cambridge and Belmont

---

[1] A motion to dismiss is the usual vehicle for a defendant to raise a claim that he has been denied his constitutional right to a speedy trial. In this case, such a motion was filed and denied, but without a full evidentiary hearing. The judge hearing the motion for new trial entertained the claim anew and impliedly ruled that the constitutional issues had not been fully and adequately developed factually or legally at the hearing on the motion to dismiss. On appeal, the Commonwealth does not question the procedure followed. Without sanctioning this approach as suitable for general application, we hold that the motion for a new trial has properly raised the constitutional questions discussed in this opinion.

booking officers and the information supplied to him by the defendant. Neither date was the true birthdate of the defendant, which was November 18, 1939. After the interrogation was completed, the defendant was released at 3:00 A.M. on his own recognizance. Before he was released, the defendant signed a form indicating that he had been advised to appear to enter pleas to the charges at 8:30 A.M. on the same day in the District Court in Cambridge. The defendant defaulted on his court appearance, and a warrant issued.

Inspector Mahoney took up the search. In the next few days, he went to 36 Stearns Road in Belmont and discovered that the defendant did not live at those premises and had given a false address. After investigation, the defendant's correct address was ascertained to be 145 Hemenway Street in Boston; conversation there with the defendant's wife provided no new leads. On October 30, 1972, the inspector entered information regarding the charges and the outstanding warrant into the National Crime Information Center (N.C.I.C.) computer bank in Washington. Together with physical information (height, weight, hair and eye color, etc.), data supplied to the center included the defendant's correct Boston address (not the false one given after arrest), and, what will be critical for this case, the birth date of November 6, 1941.

At the end of January or early February, 1973, the defendant fled from Massachusetts to Florida. He was convicted on November 13, 1973, for commission of a Florida felony and sentenced to a term of five years' imprisonment. As part of routine processing in connection with his Florida incarceration, the defendant signed a blank agreement on detainers under the interstate compact[2] requesting disposition of all outstanding indictments or complaints in other States. In signing the forms, Anderson made no mention of

[2] See Interstate Agreement on Detainers, St. 1965, c. 892, § 1, reprinted in Mass. Gen. Laws Ann., c. 276 app. at 261 et seq. (West 1972); Fla. Stat. Ann. § 941.45 et seq. (West 1980 Supp.); Pub. L. No. 91-538, 84 Stat. 1397 (1970).

any of the charges.  In early January, 1974, California and Illinois detainers were lodged in Florida for the defendant's alleged commission of felonies in both States.  On January 24, 1974, the defendant signed Form 4 under the Interstate Detainer Agreement, offering to surrender to all jurisdictions with open warrants and to waive rendition on those cases.  Again, he made no mention of the undiscovered Massachusetts charges.  The next series of moves include: (a) Anderson's escape in May, 1976, from Florida custody; (b) his commission in the same month of the crime of kidnapping in Worcester; (c) his arrest in June, 1976, in Maine on a motor vehicle charge, with rendition to Worcester; and (d) his return to Florida in September, 1976, to complete his Florida sentence with trial on the Worcester crime postponed.  After he completed his Florida sentence, the defendant was returned to Worcester, where in December, 1977, he was convicted of kidnapping and sentenced to two years in a house of correction.

Throughout this last period of approximately three years, Inspector Mahoney made semiannual checks with N.C.I.C. and received no information concerning the defendant's whereabouts, presumably because of the inaccurate date of birth. In March, 1978, the inspector examined the Beth Israel Hospital records pertaining to the birth of the defendant's daughter (he had learned in 1972, when he visited the Hemenway Street address, that the defendant's wife had given birth to a child). The hospital records revealed that on January 14, 1978, the defendant, writing from the Worcester County House of Correction in West Boylston, had requested a copy of the records. The officer went to West Boylston and confronted the defendant, who denied that he was Anderson and stated he had written to the hospital for a friend who was in Maine. A fingerprint matchup confirmed that Anderson had been found. It was subsequently ascertained that his correct date of birth was November 18, 1939, and that dates of birth of November 6, and 18, 1941, were false. Indictments followed from the May, 1978, sitting of

the Middlesex County grand jury, with convictions on August 23, 1978.

*Barker* v. *Wingo*, 407 U.S. 514, 530 (1972), identifies four factors to be assessed in determining whether a defendant has been denied his right to a speedy trial: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." See also *Commonwealth* v. *Whittier*, 378 Mass. 19, 21-22 (1979), and cases cited. The ultimate determination of whether the defendant's right has been abridged involves a "difficult and sensitive balancing process" which "allows the trial court to exercise a judicial discretion based on the circumstances." *Barker* v. *Wingo, supra* at 528-529, 533.

The judge implicitly assumed that the lengthy time period between the issuance of the complaints in 1972 and the date of the trial in 1978 required consideration of the other factors in the *Barker* v. *Wingo* test. See *Commonwealth* v. *Beckett*, 373 Mass. 329, 331 (1977), and cases cited. The hearing focused primarily on the factors associated with the defendant's assertion of his right and the reasons for the delay. As to these two considerations, the judge found that the defendant "did not adequately assert his rights to a speedy trial . . . [t]he fact that he routinely signed forms offered to all incoming inmates [in Florida] is not enough . . . Anderson is not a stranger to the criminal justice system . . . he must have known these charges would not just disappear." The judge also concluded that "the reason for the delay . . . was entirely of the defendant's own making . . . that the police acted reasonably and diligently in their attempts to locate [him] . . . [and] [t]heir failure to locate him prior to March, 1978, was due solely to the fact that the defendant had provided the authorities with incorrect dates of birth."

There is ample support in the record for the judge's first conclusion that the defendant did not seasonably assert his right. Although a defendant's failure to insist on a speedy trial will not necessarily constitute a waiver, it will be weighed heavily against him in his effort to establish a

denial of the right. *Barker* v. *Wingo,* 407 U.S. 514 at 531-532. The defendant's claim of the speedy trial right must be timely and unequivocal. See *Commonwealth* v. *Beckett, supra* at 333; *Commonwealth* v. *Jefferson,* 6 Mass. App. Ct. 906 (1978). Less weight is accorded to a pro forma assertion of the right. See *United States* v. *Netterville,* 553 F.2d 903, 914 (5th Cir. 1977), cert. denied, 434 U.S. 1009 (1978). Consideration is also given to whether the record as a whole demonstrates the defendant's desire for a prompt trial and whether an assertion reasonably should be expected under the circumstances. See *United States* v. *Sarvis,* 523 F.2d 1177, 1182 (D.C. Cir. 1975); *United States* v. *Green,* 526 F.2d 212, 215 (8th Cir. 1975).

The defendant's signing of a blank interstate detainer request form as part of his routine processing into incarceration in Florida falls short of an unequivocal assertion of the right. When Illinois and California responded with detainers, the defendant should have inquired about the status of the pending charges in this State. He made no attempt to bring them to the attention of the Florida correctional authorities or to demand speedy rendition and trial. Based on his prior criminal experience, the defendant could not reasonably have harbored the expectation that the Massachusetts complaints had been dismissed. It strikes us that the defendant's inaction was not induced by doubts as to his rights, but rather by a desire to evade trial. As such, it is in direct contradiction of the requirement that the right to a speedy trial must be asserted in a timely and unambiguous manner.

The judge's second conclusion, that the defendant must bear the responsibility for the delay, is also supported by the evidence. Reasonable delays due to efforts to locate defendants or witnesses are justifiable and are usually excused from the formulation. See *Commonwealth* v. *Jones,* 6 Mass. App. Ct. 750, 755 (1978), and cases cited. See also *United States* v. *Hay,* 527 F.2d 990, 995 (10th Cir. 1975), cert. denied, 425 U.S. 935 (1976); 18 U.S.C. § 3161(h)(3)(A) (1976) (Speedy Trial Act). Delays attributable to the defendant's

actions fall in this category; this is particularly so when the defendant is a fugitive from justice. *Commonwealth* v. *Underwood,* 3 Mass. App. Ct. 522, 528 (1975). *Commonwealth* v. *Giordano, post* 888 (1980). See also *United States* v. *Smith,* 534 F.2d 74, 75 (5th Cir. 1976), cert. denied, 429 U.S. 1100 (1977); *United States* v *Diaz,* 535 F.2d 130, 132 (1st Cir. 1976); *United States* v. *Pilla,* 550 F.2d 1085, 1087, 1093 (8th Cir.), cert. denied, 432 U.S. 907 (1977). The record as a whole, commencing with the defendant's escape to Florida and ending with his refusal to identify himself in West Boylston, displays his persistent efforts to hide his whereabouts from the Massachusetts police. Much like the case where concealment of the wrong tolls a statute of limitations, a defendant's conscious evasion of the authorities will adversely affect his speedy trial claim.

We reject the defendant's argument that the police were negligent in their search and that better efforts would have led to his discovery in early 1974, when Illinois and California lodged their detainers. The judge had every right to disbelieve the defendant's testimony that he gave an accurate birthdate to Inspector Mahoney and to credit the fact that the false birthdate resulted in the computer's drawing semi-annual blanks (it appears Illinois and California had his correct date of birth). Indeed, the N.C.I.C. "Training Key" acknowledges date of birth to be an "acceptable identifier." There was no evidence that other available information such as the defendant's social security number (if it was accurate) would have helped; nor was there evidence to dispute the inspector's testimony that fingerprints are not banked with the Federal Bureau of Investigation until after a Massachusetts conviction. During the period other leads were pursued by the police, such as efforts to obtain license information and checks with the State police CORI system, but dead ends were always encountered. We hold that if there was any negligence which could be attributed to the agents of the Commonwealth, it was not culpable, and not of the degree in light of the defendant's evasions that would be weighted so heavily against the government as to cause it

to forfeit its right to try the defendant for serious felonies. See and compare *Smith* v. *Hooey,* 393 U.S. 374, 375, 381-383 (1969) (once a State discovers location of a defendant out of State it must make reasonable efforts to comply with his speedy trial requests). See also *Smith* v. *Mabry,* 564 F.2d 249, 252, 253 (8th Cir. 1977), cert. denied, 435 U.S. 907 (1978) (speedy trial right not violated despite State's negligent failure to discover the defendant's speedy trial demand).

Finally, we turn to the question of prejudice which was not specifically addressed in the judge's findings. The defendant testified that his wife's parents were living with him and his wife in October, 1972; that he saw them daily; and that he saw them on the evening of October 22, 1972, when the crimes took place. He also testified that he was informed that his mother-in-law died in January, 1974; that his father-in-law died on June 12, 1974; and that he last had contact with his wife in October, 1974. He argues in his brief that the death of his relatives "depriv[ed] him of his only two alibi witnesses, as he was with them on the night of the subject rape," and that his wife who "probably" was still in the hospital after the birth of their child could be "considered a peripheral corroborative witness." We note that the defendant's testimony never firmly asserted that his relatives would testify that he was in their presence when the crimes were committed. There is a measure of disingenuousness apparent in the argument that a solid alibi existed, based solely on testimony that the defendant saw his relatives "daily" and "on that evening." The amorphous proof on the point and its source may well have caused the judge to discredit the testimony and to decline to draw the hoped for inferences. See *United States* v. *Fairchild,* 526 F.2d 185, 197 (7th Cir. 1975), cert. denied, 425 U.S. 942 (1976). Moreover, even if the Commonwealth had discovered the defendant in Florida in early 1974, about the time that Illinois and California lodged their detainers, it is unlikely that he would have been brought to trial in Massachusetts prior to September, 1974. Indeed, it was not until March 25,

1975, that Illinois settled its hold on him by permitting the cancellation of its detainer. The temporal sequence is such then that the loss of the testimony would not, on any view of the evidence favorable to the defendant, be an event attributable to delay by the Commonwealth. See *Commonwealth* v. *Morgan*, 6 Mass. App. Ct. 939 (1978). See also *United States* v. *Robinson*, 553 F.2d 429, 431 (5th Cir. 1977), cert. denied, 434 U.S. 1016 (1978); *United States* v. *Netterville*, 553 F.2d at 916-917; *United States* v. *Pitts*, 569 F.2d 343, 347 (5th Cir.), cert. denied, 436 U.S. 959 (1978).

Nothing else of merit has been shown to indicate that the judge misapplied the constitutional formulation or that he otherwise abused his discretion in denying the motion. *Earl* v. *Commonwealth*, 356 Mass. 181, 184 (1969). *Commonwealth* v. *Cook*, 380 Mass. 314, 320-321 (1980).

*Order denying motion for new
trial affirmed.*