COMMONWEALTH vs. PAUL McDONALD.

Hampden.  October 9, 1985. — January 2, 1986.

Present: GREANEY, C.J., PERRETTA, & KASS, JJ.

*Practice, Criminal,* Speedy trial, Defendant's competency, Dismissal, Request for fees and costs. *Amnesia. Hypnosis.*

On appeal from the denial of a motion to dismiss indictments for lack of a speedy trial, filed by a defendant who was brought to trial nineteen months after his arraignment, it was held that, as a result of a defense motion to dismiss on other grounds which was filed without the required supporting affidavit and which contained language suggesting that defense counsel was seeking certain information to include in a supporting affidavit, the period from the filing of the incomplete motion through the hearing on it was to be excluded for purposes of calculating the one-year deadline of Mass.R.Crim.P. 36, and that, in the circumstances, the defendant was not denied his right to a speedy trial under either the State or Federal Constitution. [370-374] ·

The judge in a criminal case did not err in denying the defendant's motion to dismiss based on the claim that as a result of being placed under hypnosis during a court-ordered psychiatric examination the defendant suffered amnesia concerning the events in question and that, consequently, the defendant was not competent to stand trial. [374-376]

In a criminal case in which the defendant claimed that as a result of being placed under hypnosis during a court-ordered psychiatric examination he suffered amnesia concerning the events in question, the judge did not abuse his discretion in denying the defendant's request for authorization to have the psychiatrist who had examined him brought from Missouri at the Commonwealth's expense, where defense counsel had received a written report from the psychiatrist, but could not particularize any way in which the psychiatrist's testimony would be helpful to the defense, and where there was evidence that the defendant had no memory of the events in question even before he was placed under hypnosis. [376-377]

INDICTMENTS found and returned in the Superior Court Department on March 8, 1982.

Pretrial motions were heard by *William W. Simons,* J., *George C. Keady,* J., and *Charles R. Alberti,* J.

The cases were tried before *Alberti, J.*,

*Arlene Beth Marcus* for the defendant.

*Brett J. Vottero,* Assistant District Attorney, for the Commonwealth.

KASS, J. Although Rule 36 of the Massachusetts Rules of Criminal Procedure, 378 Mass. 909 (1979), is "designed in some measure to operate mechanically," *Barry* v. *Commonwealth,* 390 Mass. 285, 292 (1983), its application continues to disclose bugs in the machinery. Here we confront a question left open in *Barry*: how shall delays attributable to the pendency of pretrial motions be calculated? *Barry* v. *Commonwealth, supra* at 294-295. See also *Commonwealth* v. *Moore,* 20 Mass. App. Ct. 1, 5 n.7 (1985).

The motion in the instant case was not brought forward for hearing until ten months after it was filed. That same motion spawned the remaining issues on appeal: that the defendant was entitled to dismissal of the indictments against him by reason of hypnotically induced amnesia, and that he was wrongly refused financial assistance of the Commonwealth to bring from Missouri the psychiatrist who had subjected the defendant to hypnosis.

McDonald, the defendant, was convicted after a jury-waived trial of armed assault with intent to murder (G. L. c. 265, § 18), carrying a firearm without lawful authority (G. L. c. 269, § 10 [*a*]), and assault by means of a dangerous weapon (G. L. c. 265, § 15B). The defendant's troubles began as he sought entry on February 1, 1982, to the District Courthouse in Holyoke. A security guard, Clark Wall, passed a metal detector over the defendant and obliged him to disgorge a knife and a box of .22 caliber bullets. Wall asked the defendant if he had a firearm identification card (G. L. c. 140, § 129B). The defendant's reaction was to hotfoot it out of the courthouse. Wall gave chase. The defendant drew a handgun and ordered Wall to freeze. Wall froze. From a distance of about six feet from the defendant, Wall twice heard a click. After the second apparent misfire, the defendant resumed his flight and Wall resumed pursuit. Wall saw the defendant try to dispose of the handgun and its holster down a sewer catch basin. Police, in

response to a radio transmission by Wall, came upon the scene and arrested the defendant.

At McDonald's arraignment the judge ordered the entry of pleas of not guilty and, acting under G. L. c. 123, § 15, ordered him to the Treatment Center at M.C.I., Bridgewater, for mental examination to determine his criminal responsibility and his competence to stand trial. With a view to diagnosing whether McDonald's disorder was a fugue[1] or multiple personality, Dr. Bruce Harry, a psychiatrist at Bridgewater, placed him under hypnosis. The interview did not touch on the criminal episode which had landed the defendant in Bridgewater. At his trial, McDonald testified that he remembered nothing of that episode or his subsequent arrest.

1. *Speedy trial.* Trial in this case began October 24, 1983, a date nineteen months or 573 days after arraignment, which had occurred March 30, 1982. Facially, there had been a violation of Mass.R.Crim.P. 36 (b) (1) (c), 378 Mass. 910 (1979), which provides that a defendant shall be brought to trial within twelve months of arraignment. See *Commonwealth* v. *McCants,* 20 Mass. App. Ct. 294, 295 (1985), and cases cited. Unless events occurred which, under the rule, tolled the running of the one-year period for at least 208 days, the defendant was entitled to dismissal of the indictments laid against him. *Ibid.*

In denying the first motion to dismiss under rule 36, the judge concentrated on the long pendency of the defendant's pretrial motion to dismiss.[2] As a first order of business, we do

---

[1] A fugue is a mental disturbance in which a person seems to act in a purposeful manner, but after the condition passes has no recollection of his actions. 2 Schmidt, Attorney's Dictionary of Medicine, at F-91 (1984)

[2] Altogether six motions to dismiss were docketed. Two motions to dismiss related to amnesia and hypnosis and were acted on by Simons, J. There were two motions under rule 36. The first, filed July 25, 1983, before trial, was acted on by Keady, J., who dismissed it on the basis of Mass.R.Crim.P. 36 (b) (2) (A) (v) (see main text). A second was filed at trial and was denied by Alberti, J., the trial judge. That second motion to dismiss for failure to receive a speedy trial raised no new issues. The two remaining motions to dismiss raised issues not touched on in the defendant's appeal. That appeal is directed essentially to the denial of the second amnesia and hypnosis motion and the first rule 36 motion.

so as well, because if the eleven months (337) days between filing and disposition were "excludable" in counting a year for purposes of the rule, then McDonald was timely brought to trial.[3] The specific ground which the judge gave for denying the motion was that the one-year limit of rule 36 had been tolled by subparagraph (b) (2) (A) (v) of the rule, a provision which excludes "delay resulting from hearings on pretrial motions" from computation of the one year in which trial must commence.

In *Barry* v. *Commonwealth,* 390 Mass. at 294-295, the court mentioned three methods by which the boundaries of delay under rule 36 (b) (2) (A) (v) might be set: *first,* the actual days of hearings; *second,* the period from the filing of the motion until the conclusion of the hearing, the Federal standard;[4] or *third,* the period "from the date on which the request for hearing on the pretrial motion is filed [,] or, if no such request is filed, from the date the hearing is ordered, until the conclusion of the hearing." The last standard is that which is suggested in the Reporters' Notes to Mass.R.Crim.P. 36, Mass. Ann. Laws, Rules of Criminal Procedure at 528 (1979).

None of those approaches quite fits the realities which attend the pretrial motions in this case. (Else we should take the Reporters' Notes as an influential guide.) As initially filed on August 4, 1982, the defendant's motion set forth that on the preceding March 16, the defendant "was the subject of a hypnotic interview" and that "the hypnotic interview has violated his Constitutional Rights under Article[s] IV, V, VI and XIV and under the Massachusetts Constitution, Article[s] 11, 12 and 14." The motion concluded, "The defendant requests . . . the right to file briefs on this matter after receipt of the requested documents from Bridgewater State Hospital." There was no affidavit in support of the motion, as required by Mass.R.Crim.P. 13 (a) (2), 378 Mass. 871 (1979).

---

[3] The motion was filed August 4, 1982, and disposed of July 7, 1983. The motion finally disposed of was a substitute for one conditionally denied on May 27, 1983. The history of those motions is discussed in the main text.

[4] See 18 U.S.C. § 3161 [h] (1) (F) (1982), a section of the Speedy Trial Act.

In view of the absence of a supporting affidavit, which caused the motion to dismiss to be incomplete, the clerk of the Superior Court was not in a position to schedule the motion for hearing. See Mass.R.Crim.P. 13 (d) (2) (A), 378 Mass. 873 (1979), which requires the clerk to schedule a hearing on a pretrial motion within seven days after it is filed. As for the prosecution, it had reason to think that any steps it might take to press for a hearing on the motion would have been met by a defense assertion that it was still hunting information to include in a suitable supporting affidavit. That impression was enhanced by the paragraph in the motion which contemplated a supporting memorandum once defense counsel learned more about what had transpired at Bridgewater.

The record is murky as to the activity of the parties between August 4, 1982, and May 20, 1983, when defense counsel finally filed an affidavit (that affidavit does not appear in the record appendix) in support of the motion to dismiss. We are able to infer from the docket and from the transcript of a motion hearing held on May 26 and 27, 1983, that there were continuing, albeit sporadic, efforts by defense counsel to learn more about McDonald's examinations at Bridgewater. To those efforts, the prosecution and successive judges seem to have lent modest support.

On May 24, 1983, i.e., promptly after defense counsel had made an attempt to complete his motion to dismiss by filing an affidavit, the Commonwealth moved to strike that motion. The motion to strike was allowed three days later, on May 27, 1983, without prejudice to the defendant's filing a like motion, supported by sufficient affidavits and a memorandum of law[5] within thirty days. Defense counsel did file a fresh motion to dismiss on June 24, 1983. It said the defendant had no memory of the events before, during, or after the criminal episode which underlay his indictment. His amnesia, the motion said, was a consequence of the defendant's interview under hypnosis. Accordingly, the motion went on, the defendant could not assist his counsel in preparing a defense and, therefore, he

---

[5] Mass.R.Crim.P. 13 (a) (4), 378 Mass. 872 (1979).

was deprived of his constitutional right to have the assistance of counsel. That second motion was denied after hearing on July 7, 1983.

Had the first motion to dismiss been a completed motion, i.e., accompanied by one or more affidavits (as Mass.R.Crim.P. 13[a] [2] requires) and the promised memorandum of law, we think the prosecution and the trial court would have had some responsibility to bring it up for a hearing and disposition. Those players in the judicial process cannot absolve themselves of their burden to make rule 36 work by hiding behind dilatory conduct of defense counsel — if that is all that is involved. See *Barry* v. *Commonwealth,* 390 Mass. at 296; *Commonwealth* v. *Moore,* 20 Mass. App. Ct. at 4. We take that to be the significance of the difference in text between rule 36 (b) (2) (A) (v) and its Federal analog, 18 U.S.C. § 3161 [h] (1) (F) (1982).[6] The heavier burden to "press [the] case through the criminal justice system" remains upon the defendant. *Barry* v. *Commonwealth,* 390 Mass. at 297. In the instant case, the defendant's first pretrial motion did not simply lie fallow. The motion was incomplete and the defendant had asked for time to complete it. In a sense, his initial motion can be read as a request for a continuance. See *Commonwealth* v. *Farris,* 390 Mass. 300, 305 (1983); *Commonwealth* v. *McCants,* 20 Mass. App. Ct. at 297-300. Reports and records from Bridgewater were very slow in coming, but that cannot be laid at the feet of the prosecution or the court. The latter, particularly, was responsive to requests by the defendant for orders to officials at Bridgewater to make available the records defense counsel wished to see.

While the efforts of defense counsel[7] were scarcely unremitting, there was activity during the pendency of the first pretrial motion which all concerned reasonably could think was in the

---

[6] Compare the State text, "delay resulting from hearings on pretrial motion" to the Federal text: "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."

[7] Appellate counsel did not try the case.

interest of the defendant. Cf. *Commonwealth* v. *Johnson,* 16 Mass. App. Ct. 935, 936 (1983). At the least, this is a case where the defendant has been responsible for the delay, has acquiesced in the delay, and has hoped to profit from the delay. See *Barry* v. *Commonwealth,* 390 Mass. at 295; *Commonwealth* v. *Fasano,* 6 Mass. App. Ct. 325, 333 (1978). We are of opinion that if a defendant files a pretrial motion and thereafter is engaged in investigative activity which bears on the presentation of the motion, the period from the filing of the motion through hearing of it should be excluded for purposes of calculating the rule 36 deadline. An additional period, not to exceed thirty days, for disposition of the motion, may also be excluded. Mass.R.Crim.P. 36 (b) (2) (A) (vii), 378 Mass. 911 (1978).

McDonald also makes generalized arguments that he has been denied a speedy trial in violation of Mass.R.Crim.P. 36 (c), 378 Mass. 912 (1979),[8] and in violation of Federal and State constitutional guarantees.[9] The length of the delay was considerable but there is no showing that the government had contrived or contributed to the delay. See *Commonwealth* v. *Marchionda,* 385 Mass. 238, 242 (1982). The defendant did not assert a right to a speedy trial until after the delay we have been considering had occurred. The defendant suffered no prejudice in the sense of being impaired in his ability to present a defense. See and compare *Barker* v. *Wingo,* 407 U.S. 514, 521, 534 (1972); *Commonwealth* v. *Look,* 379 Mass. 893, 897-898, 903, cert. denied, 449 U.S. 827 (1980); *Commonwealth* v. *Burhoe,* 3 Mass. App. Ct. 590, 594 (1975). Dismissal was not warranted on the basis of rule 36 (c) or on constitutional grounds.

2. *Interview under hypnosis.* We do not deal here with hypnotically aided testimony. See generally *Commonwealth* v. *A*

---

[8] This portion of the rule requires dismissal upon a determination by the judge that: "(1) the conduct of the prosecuting attorney in bringing the defendant to trial has been unreasonably lacking in diligence and (2) this conduct on the part of the prosecuting attorney has resulted in prejudice to the defendant."

[9] The Sixth Amendment of the United States Constitution and art. 11 of the Massachusetts Declaration of Rights.

*Juvenile,* 381 Mass. 727 (1980); *Commonwealth* v. *Kater,* 388 Mass. 519 (1983). No evidence stemming from, or related to, a person under hypnosis has been offered in the case by any party. The interview of McDonald under hypnosis proceeded entirely upon the initiative of the psychiatrist, Dr. Harry, who was responsible for diagnosing McDonald's mental condition. After several interviews, Dr. Harry had begun to suspect the possibility of a dual personality or a fugue. It was for the purpose of isolating a diagnosis that Dr. Harry, after consultation with psychiatrists at McLean Hospital and in Chicago, who had treated multiple personality cases, placed McDonald under hypnosis. Dr. Harry interpreted what McDonald had said while under hypnosis to indicate that he did not have a multiple personality, but had fugues. In doing so, Dr. Harry stayed clear of inquiry about the incident at the Holyoke courthouse and made no attempt to enhance McDonald's memory about that affair.

Concerning that incident, McDonald said his mind was a blank. Amnesia, in and of itself, does not render an accused person incompetent to stand trial. *Commonwealth* v. *Lombardi,* 378 Mass. 612, 613, 615-616 (1979). Were it otherwise, one might anticipate a pandemic of forgetfulness among defendants in criminal cases. See *Commonwealth* v. *Louraine,* 390 Mass. 28, 38 n.12 (1983). McDonald's theory is that Dr. Harry's placing him under hypnosis somehow wiped out his memory.

Had that occurred, it is far from self-evident that McDonald was entitled to a finding that he could not assist in his defense. The allegedly fateful interview had not been procured by the prosecution. As to McDonald's condition at the time of trial, there was testimony from a psychiatrist and from McDonald which supported the trial judge's finding that McDonald had an ability as of the time of trial to consult with his lawyer with a reasonable degree of rational understanding. See *Commonwealth* v. *Lombardi,* 378 Mass. at 613-614. See also *Dusky* v. *United States,* 362 U.S. 402 (1960). See Note, Amnesia: A Case Study in the Limits of Particular Justice, 71 Yale L.J. 109, 127-128, 136 (1961). The defendant has not suggested a line of defense which might have been developed but for his amnesia. See *Commonwealth* v. *Lombardi, supra* at 616.

There was sufficient basis for the judge to conclude that the asserted link between McDonald's hypnosis, his amnesia, and his competence to stand trial was without support. There was no error in the denial of the motion to dismiss the indictment.

3. *Refusal to defray expenses of bringing Dr. Harry from Missouri*. On May 18, 1983, the defendant filed a motion for authorization to have Dr. Eichler (an expert in forensic hypnosis whom defense counsel had consulted) brought from Connecticut and Dr. Harry from Missouri at the Commonwealth's expense so that they might testify. The motion was ultimately[10] denied as to Dr. Harry.

Defense counsel, who had received a written report from Dr. Harry, was unable to particularize about what it was he proposed to interrogate Dr. Harry. What defense counsel hoped to establish was the Dr. Harry's interview of the defendant under hypnosis had eradicated McDonald's memory, though there was evidence that McDonald's memory was already hazy prior to the hypnosis.

Prescinding from whether the question is even open, in light of the defendant's failure to bring it before a single justice of the Appeals Court, as required by G. L. c. 261, § 27D, the judge acted within his discretion in denying the motion for expenses. The test is not whether there is some possibility that the testimony sought would be helpful to the indigent defendant, but whether the testimony "is reasonably necessary to prevent the party from being subjected to a disadvantage in preparing or presenting his case adequately, in comparison with one who could afford to pay for the preparation which the case reasonably requires." *Commonwealth* v. *Lockley*, 381 Mass. 156, 160-161 (1980). Dr. Harry had said his piece in two letters and a clinical report. Had the defendant fixed on some inconsistency or peculiar weakness in what Dr. Harry had reported and propounded some theory of how that might assist the defense, the range of the motion judge's discretion would surely have been narrower. In the absence of points of

---

[10] The motion judge had first allowed the motion to bring Dr. Harry in, but reversed himself after probing defense counsel about what he intended to ask of Dr. Harry.

Commonwealth *v.* McDonald.

attack, defense counsel could not do much better than to argue that there was no way of knowing what Dr. Harry might contribute without an opportunity to question him. So tentative a ground puts the cost of flying in Dr. Harry in the luxury class of defense expenditures.

A further difficulty with the defendant's request is the underlying factual premise: the relationship of the hypnosis to the defendant's amnesia. There was nothing beyond the defendant's assertion to support that connection. The defendant offered no evidence that such a connection was possible or likely. The testimony of a psychiatrist called by the defense, Dr. Eichler, did not go much beyond an expression that if he knew more about the hypnosis session, he could speak more knowledgeably. There was, on the other hand, evidence that McDonald's memory of his encounter with the courthouse security guard in Holyoke was already a blank before Dr. Harry placed him under hypnosis. Indeed, it was McDonald's in and out memory which made Dr. Harry think about the possibility of multiple personality. "I did not attempt to interview the defendant with regard to his lost memories from the incident involving Court Officer Wall," Dr. Harry reported in a letter to the chief probation officer of the District Court in Holyoke. "In the interview in question (i.e., the one under hypnosis), I explored diagnostic issues relevant to the defendant's alleged history of numerous periods of amnesia."

We think the several judges acted well within their discretion in denying the motions.

*Judgments affirmed.*