## COMMONWEALTH *vs*. RAUL VASQUEZ.

No. 00-P-910.

Suffolk. January 18, 2002. - July 26, 2002.

Present: GREENBERG, KAFKER, & COHEN, JJ.

*Constitutional Law,* Speedy trial, Assistance of counsel. *Due Process of Law,* Assistance of counsel. *Practice, Criminal,* Speedy trial, Assistance of counsel, Instructions to jury.

A criminal defendant was not entitled to dismissal of the charges against him pursuant to Mass.R.Crim.P. 36, 378 Mass. 909 (1979), despite the fact that 1,119 days had passed from the date of his arraignment to the date he filed a motion to dismiss on speedy trial grounds, where 917 of those days were excludable because the delay ultimately benefited the defendant, because he acquiesced in numerous continuances in the interim, and because the Commonwealth was not responsible for the delay caused by the Department of Social Services in completing the requested production of documents. [524-529]

A criminal defendant was not denied his constitutional right to a speedy trial, despite a nearly four-year delay between his arraignment and his trial, where the delay in trying the defendant stemmed from the Department of Social Service's failure to produce quickly and completely the requested records; where the defendant did not assert his right to a speedy trial, even while being relatively attentive to other aspects of his defense; and where the defendant was not prejudiced by the delay. [529-531]

Trial counsel for a criminal defendant was not ineffective in not filing a motion to dismiss on speedy trial grounds, where the delay was the product of continuances that the defendant requested, that the court ordered, or to which the defendant acceded; moreover, the defendant's contention that he was not adequately informed about the consequences of agreed-upon continuances on his speedy trial rights, or those arising from his failure to attend court proceedings, was without merit, where there was no indication of a breakdown in communication between lawyer and client, where the defendant did not express dissatisfaction with the lengthy course of pretrial proceedings in his case before filing his speedy trial motion, and where the defendant was free on bail during the time period in question. [531-534]

At the trial of indictments charging rape of a child under sixteen, assault with intent to rape a child under sixteen, and rape, the judge properly declined to instruct that the defendant's honest and reasonable belief that the victim consented to the sexual encounters amounted to a defense to the charge of rape, where, under the circumstances of the case, it could not be said that the defendant's belief that the victim consented would have been reason-

able, and where such an instruction would have forced the defendant to concede to the prosecution the element of consent. [534-536]

INDICTMENTS found and returned in the Superior Court Department on July 12, 1995.

A motion to dismiss was heard by *Ralph D. Gants*, J.; the cases were tried before *Barbara J. Rouse*, J, and a motion for a new trial was heard by her.

*Daniel J. Bennett* for the defendant.

*Kajal K. Chattopadhyay*, Assistant District Attorney, for the Commonwealth.

GREENBERG, J. On June 10, 1999, nearly four years after numerous indictments were handed down, Raul Vasquez was convicted of two counts of rape of a child under sixteen, two counts of assault with intent to rape a child under sixteen, and one count of rape. Vasquez appeals, claiming that his motion to dismiss on speedy trial grounds was erroneously denied; that his trial counsel was constitutionally ineffective in failing to inform him that his speedy trial rights were being waived each time an agreed-upon continuance was granted without his presence in court, and in failing to file a second motion to dismiss on speedy trial grounds; and that a substantial risk of a miscarriage of justice resulted from the trial judge's failure to instruct on whether Vasquez honestly and reasonably believed that the victim had assented to the alleged sexual encounters in this case. He also appeals from the denial of his motion for new trial. The appeals have been consolidated by this court. We affirm.

1. *Rule 36 analysis.* Between August 16, 1995, when Vasquez was arraigned, and September 9, 1998, when he filed his motion to dismiss on speedy trial grounds, 1,119 days passed.[1] These events, the arraignment and the filing of the speedy trial motion, are initial markers for calculating the total number of days that lapsed for purposes of Mass.R.Crim.P. 36, 378 Mass.

---

[1] "In computing any time limit other than an excluded period, the day of the act or event which causes a designated period of time to begin to run shall not be included. Computation of an excluded period shall include both the first and the last day of the excludable act or event." Mass.R.Crim.P. 36(b)(3), 378 Mass. 912 (1979).

909 (1979). *Commonwealth* v. *Spaulding*, 411 Mass. 503, 504 n.3, 505 n.4 (1992). Rule 36(b)(1) has been read as requiring the prosecution to go forward with a defendant's trial within one year (365 days) of arraignment, otherwise the defendant is "presumptively entitled to dismissal of the charges unless the Commonwealth justifies the delay." *Id.* at 504. Deducting 365 from the 1,119 days that passed before Vasquez filed his speedy trial motion leaves 754 days for the Commonwealth to justify. "[D]elay may be excused by a showing that it falls within one of the '[e]xcluded [p]eriods' provided in rule 36(b)(2), or by a showing that the defendant *acquiesced* in, was responsible for, or benefited from the delay" (emphasis supplied). *Ibid.* See *Barry* v. *Commonwealth*, 390 Mass. 285, 295 (1983).

The Commonwealth's main argument is that the long period between March 7, 1996 (when the Superior Court issued a supplemental order to the Department of Social Services [DSS] to produce certain records requested by Vasquez), and December 24, 1998 (when DSS's second and final production was made available to Vasquez by the court), should be excluded because it ultimately benefited Vasquez, and he acquiesced in numerous continuances in the interim. Vasquez responds by conceding some of these continuances while simultaneously contending that fault for the remainder of this time lies primarily with the Commonwealth, despite his failure to object. He cites *Commonwealth* v. *Spaulding*, where the Supreme Judicial Court emphasized, "we have never held that rule 36 time does not begin to run until the defendant first makes an objection. Such a holding would upset the balance of obligations envisioned by the rule, under which the 'primary responsibility for setting a trial date lies with the district attorney.' " 411 Mass. at 506, quoting from *Barry* v. *Commonwealth*, 390 Mass. at 296 n.13. Compare *Commonwealth* v. *Fleenor*, 39 Mass. App. Ct. 25, 27 (1995) (citing *Spaulding* and emphasizing defendant's obligation to object). At oral argument, appellate counsel for Vasquez, who also filed the motion for new trial but was not trial counsel, clarified his position by asserting that we should hold the Com-

monwealth responsible for the long delay caused by DSS's tardy efforts at production.[2]

In analyzing Vasquez's appeal, we are initially met with the affidavits he submitted with his motion for new trial.[3] Those affidavits supported Vasquez's arguments concerning trial counsel's alleged ineffectiveness in not informing him of the ramifications of not being in court to agree to continuances, and in not submitting a second motion to dismiss on speedy trial grounds. Although he does so now, Vasquez did not attempt to raise the denial of his speedy trial motion in his motion for new trial. All of these issues are nonetheless intertwined, and therefore relevant to our consideration of his consolidated appeals. In addition, the judge who ruled on Vasquez's new trial motion essentially denied it for the reasons stated by the judge who originally denied the speedy trial motion, even though the new trial motion raised those issues in the somewhat distinct framework of ineffective assistance of counsel.

"[W]e are in as good position as the judge[s] below to decide whether the time limits imposed by [rule 36] have run." *Barry* v. *Commonwealth*, 390 Mass. at 289. Therefore, "while we will give deference to the determination[s] made by the judge[s]

---

[2]Defense trial counsel's affidavit, filed with his motion to dismiss the indictments on speedy trial grounds, further details the procedural chronology of this case, including, in particular, information about the delay in receiving production from DSS. The supplemental order allowing for production, issued on March 7, 1996, included a deadline of March 26, 1996, and called for a court review according to the second procedural stage in *Commonwealth* v. *Bishop*, 416 Mass. 169, 181-182 (1993). Defense trial counsel forwarded this order to DSS with a letter, also dated March 7, 1996. When DSS did not completely produce the requested records by July 25, 1996 (the record is not clear how defense trial counsel knew what DSS had produced by this time), he wrote a letter requesting further production. Although DSS subsequently produced additional records on April 10, 1997, defense trial counsel never received notice of that production, its contents, nor access to any of those records until December 22, 1998 (long after the filing of his speedy trial motion, and the same day the Superior Court heard argument on that motion).

[3]In two affidavits filed with his motion for new trial, Vasquez asserted that because he was not in court on nineteen specific dates, he did not agree or accede to continuances on those dates, nor was he ever informed by trial counsel that by not being present he "would be waiving statutory or constitutional rights." Vasquez also asserts in his affidavit that "if I had known that I was waiving statutory or constitutional rights to a speedy trial, I would have been present and would have objected to any continuances."

below, we may reach our own conclusions." *Id.* at 290. In particular, we think that the judge addressing Vasquez's motion for new trial would have been justified in not crediting his suspiciously tardy, self-serving, inconsistent, and conclusory affidavits. See note 3, *supra*; *Commonwealth* v. *Wheeler*, 52 Mass. App. Ct. 631, 639-640 (2001). We also note that, with only one exception not dispositive here, Vasquez has made no attempt to supplement the docket or contend, broadly, that it did not accurately disclose the diligence of either side, or lack thereof, in bringing his case to trial. See *Commonwealth* v. *Mattos*, 404 Mass. 672, 676-677 (1989); *Commonwealth* v. *Wysocki*, 28 Mass. App. Ct. 45, 48 (1989).

Vasquez's attempts to align this case with *Commonwealth* v. *Spaulding* are unsuccessful; there, no argument was made by the Commonwealth that the defendant benefited from the delay. 411 Mass. at 509. Here, on the other hand, the Commonwealth correctly points out that Vasquez ultimately did receive the records he requested from DSS. Moreover, trial counsel in this case was not gripped by inertia while waiting for the records requested from DSS; another motion to dismiss was filed with respect to the charges under G. L. c. 272, § 29, as well as an offer of proof to assist the Superior Court in its review of DSS's records. Vasquez was also afforded additional time to investigate possible defenses and produce material potentially helpful to his defense. Hence, regardless of whether Vasquez agreed to or acquiesced in the long delay between March 7, 1996, and September 9, 1998, he clearly benefited from it. See *Barry* v. *Commonwealth*, 390 Mass. at 295; *Commonwealth* v. *Farris*, 390 Mass. 300, 305 (1983); *Commonwealth* v. *Lauria*, 411 Mass. 63, 68, 71 (1991).

On the record before us, there is also no reason for us to hold the Commonwealth responsible for DSS's long delay in completing the requested production. There is no showing of any connection between DSS's delay and the Commonwealth; rather, complicated privileges and procedures and additional agencies are involved in the requested production. As noted by the judge who originally heard Vasquez's speedy trial motion, while DSS has a legal obligation to investigate allegations of child abuse and transmit a report to the district attorney if it

finds reasonable cause to believe that the child was sexually exploited, it does not conduct its investigation on behalf of the district attorney or at that office's direction. See G. L. c. 119, § 51B. Moreover, except for the information contained in that report, other DSS records are protected from disclosure through certain evidentiary privileges. Compare, e.g., G. L. c. 112, § 135A (social worker-client privilege), with G. L. c. 119, §§ 51A & 51B (exempting from G. L. c. 112, § 135A, privileged information that comprises abuse report). Apart from those records disclosed in the abuse report, DSS also has an obligation to secure the confidentiality of its other records, even from the district attorney. Further logistical and security concerns appear, as well, when DSS transfers custody of its records, or copies, to the courts, which the *Bishop-Fuller*[4] screening procedures only begin to allay.[5] See, e.g., *Commonwealth* v. *Tripolone*, 425 Mass. 487, 488-489 (1997); *Commonwealth* v. *Pare*, 427 Mass. 427, 429-433 (1998). See also *Commonwealth* v. *Sheehan*, 435 Mass. 183 (2001).

We therefore exclude the entire time between March 7, 1996, and September 9, 1998, a total of 917 days. Mass.R.Crim.P. 36(b)(3). When subtracted from the 1,119 days that passed between Vasquez's arraignment and the filing of his speedy trial

---

[4]*Commonwealth* v. *Bishop*, 416 Mass. 169 (1993). *Commonwealth* v. *Fuller*, 423 Mass. 216 (1996).

[5]We have not squarely faced the issue of how to account for delay in receiving confidential records requested by (and thus benefiting) the defendant. Analysis under the already firmly settled and delineated rule 36(b) should be appropriate, for the reasons we have just noted; in most cases, the delay will benefit the defendant, so more must be shown than mere lack of diligence by DSS. The closest we have come to addressing any other nuances involved in the analysis is *Commonwealth* v. *Sigman*, 41 Mass. App. Ct. 574, 577, 579-580 (1996), where we dealt with a delay in producing records held by a counseling center in another State that may have had exculpatory value.

At oral argument, Vasquez cited *United States* v. *Trueber*, 238 F.3d 79 (1st Cir. 2001), in support of his argument that we should hold the Commonwealth responsible for the delays of DSS and the Superior Court in making the requested records available to him. We fail to see the relevance of *Trueber* to this case. We also remind counsel that "reliance upon the reasoning of Federal cases should be undertaken with caution" in the speedy trial context. *Commonwealth* v. *Lauria*, 411 Mass. at 71, citing *Barry* v. *Commonwealth*, 390 Mass. at 290 n.9.

motion, we see clearly that the Commonwealth was well within the one year allowed under rule 36.[6]

2. *Alleged deprivation of Vasquez's constitutional right to a speedy trial.* Rule 36 of the Massachusetts Rules of Criminal Procedure, captioned "Case Management," is "wholly separate from the defendant['s] constitutional right to a speedy trial." *Commonwealth* v. *Lauria,* 411 Mass. at 67. Here, the nearly four-year delay between Vasquez's arraignment in August, 1995, and his trial in June, 1999, warrants a further, discrete inquiry. See *Barker* v. *Wingo,* 407 U.S. 514, 530-533 (1972); *Commonwealth* v. *Edgerly,* 390 Mass. 103, 104 (1983). We consider, in addition to the length of the delay, the reasons behind it, the extent of Vasquez's assertion of his right to a speedy trial, and the prejudice, if any, inuring to him from the delay. See *Barker* v. *Wingo,* 407 U.S. at 530-533; *Commonwealth* v. *Edgerly,* 390 Mass. at 104. "[W]e weigh [the remaining three factors] in the circumstances of this case, keeping in mind that [Vasquez] bears the burden of showing prejudicial delay sufficient to warrant dismissal of the indictment against him. *Commonwealth* v. *Gilbert,* 366 Mass. 18, 22 (1974). *Commonwealth* v. *Jones,* 360 Mass. 498, 502 (1971)." *Commonwealth* v. *Look,* 379 Mass. 893, 898, cert. denied, 449 U.S. 827 (1980).

As already noted, much of the delay in trying Vasquez stemmed from DSS's failure to produce quickly and completely the requested records. In addition, there was a substantial period when those records were waiting to be, and later were being, reviewed by the Superior Court prior to their being made available to Vasquez. The judge who addressed Vasquez's speedy trial motion made findings to this effect as a basis for rejecting his motion, and the judge addressing his new trial motion incorporated those findings into her decision. On appeal, those findings, now made by two judges, are entitled to deference. *Commonwealth* v. *Lauria,* 411 Mass. at 71. In addition to the

[6]Vasquez makes no argument for dismissal pursuant to Mass.R.Crim.P. 36(c). Based on our analysis, we do not pause to calculate the countable and excludable time in the remaining period between Vasquez's arraignment on August 16, 1995, and the issuance of the supplemental order for production of records from DSS on March 7, 1996, nor do we explore any other rationale that might be available for excluding specific segments of time between March 7, 1996, and September 9, 1998.

reasons stated earlier about not holding the Commonwealth accountable for delay caused by DSS and the courts, we echo the Supreme Judicial Court's statement of caution in *Commonwealth* v. *Lauria*, 411 Mass. at 70: "There obviously should be no per se rule that delay caused by court papers being misplaced always counts against the Commonwealth and in favor of the defendant. What needs to be done is a careful analysis of how each of the parties with obligations to help manage the case under rule 36 dealt with, or responded to, the problem causing the delay." Cf. *Commonwealth* v. *Spaulding*, 411 Mass. at 510 (distinguishing *Commonwealth* v. *Lauria*).

When we conduct this analysis and consider the third *Barker* v. *Wingo* factor, Vasquez's assertion of his speedy trial rights, we return to the same issues that we addressed in the rule 36 context. Although Vasquez did not object on the record to the many continuances that played a role in the delay of his trial, we emphasize that his counsel did not stand still while waiting for DSS's production. Counsel moved to dismiss certain charges, asked for funds to hire an investigator, and submitted an offer of proof. Against this backdrop of relative attentiveness, Vasquez's failure to assert earlier his right to a speedy trial, as well as his subsequent assertion of counsel's ineffectiveness, is suspicious. See *Barker* v. *Wingo*, 407 U.S. at 534-535; *Commonwealth* v. *Look*, 379 Mass. at 900-901; *Commonwealth* v. *Lanigan*, 419 Mass. 15, 19 (1994). This failure, as noted by the judge who addressed Vasquez's speedy trial motion and which was later incorporated into the decision on Vasquez's motion for new trial, deserves "strong evidentiary weight." *Commonwealth* v. *Look*, 379 Mass. at 900, quoting from *Barker* v. *Wingo*, 407 U.S. at 529, 531. See *Commonwealth* v. *Anderson*, 9 Mass. App. Ct. 699, 703-704 (1980).

Ultimately, Vasquez's constitutional claim to a speedy trial falters when we analyze the fourth *Barker* v. *Wingo* factor, the prejudice caused by the delay. On this point, Vasquez strains to find a connection between the long delay and the Commonwealth's emergency motion to conduct a medical examination of him, filed on April 21, 1999, only two weeks before the scheduled trial date of May 3, 1999. Vasquez asserts that the evidence revealed by this medical examination would not

otherwise have been available or admissible, if not for the long delay. Nonetheless, Vasquez does not explain how the delay contributed to the discovery of this evidence.[7] The Supreme Judicial Court dealt with a similarly flawed analysis in *Commonwealth* v. *Lanigan*, 419 Mass. at 20:

> "A late discovery of incriminating evidence . . . which occurs as a result of a claimed improper delay in the trial of a case does not alone present the kind of prejudice to a defendant's case with which constitutional speedy trial principles are concerned. The prejudice that is relevant is the impairment of the *defendant's* case by reason of the delay" (emphasis added).

Vasquez's claim fails because he does not allege the unavailability of any potential defense witnesses, or a failure of memory on the part of any witnesses. *Id.* at 19. See *Doggett* v. *United States*, 505 U.S. 647, 654-657 (1992); *Commonwealth* v. *Look*, 379 Mass. at 901-903.

3. *Alleged ineffective assistance of counsel.* Vasquez next argues that his trial counsel was ineffective in not filing a second motion to dismiss on speedy trial grounds when his trial ultimately did not commence until nine months after he filed his first speedy trial motion, and six months after decision on that motion.

---

[7]On appeal, Vasquez does not argue that the judge who ruled on the Commonwealth's motion for a medical examination erred in his decision. Instead, Vasquez argues that he was prejudiced because a preliminary interview of the victim, a later videotaped interview of the victim, and presentation of the case to the grand jury did not uncover what he claims was the key evidence against him. As stated in the affidavit accompanying the Commonwealth's motion, however, the victim had, before Vasquez's arraignment, described the defendant as an uncircumcised male with a condition that made him unable to pull the foreskin over the head of his penis without experiencing pain, because the diameter of the foreskin is narrower than the head of his penis. Further, this medical condition, phimosis, only appears when the penis is erect. What the Commonwealth sought from a medical examination was confirmation that Vasquez had this condition. The urologist who performed the examination testified to this effect at Vasquez's trial. Vasquez also does not challenge the admissibility of the doctor's testimony. The key point, for speedy trial purposes, is that Vasquez now provides no explanation for how the delay contributed to the appearance of this evidence, nor does he attempt to argue that trial counsel was ineffective in not challenging or investigating this incriminating evidence.

The additional nine-month delay was the product of nine additional continuances. Four of those continuances came at the defendant's request, and therefore would have been excluded under Mass.R.Crim.P. 36(b)(2)(F). One of the continuances was by court order, also excludable under Mass.R.Crim.P. 36(b)(2)(F), and trial counsel apparently acceded to the remaining four continuances. In these circumstances, there can be no showing, merely by counting the passage of additional time, that "better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). *Commonwealth* v. *Carlton*, 43 Mass. App. Ct. 702, 705 (1997). This consequence is especially true when we recall that the defendant's requested continuances had the effect of forestalling the hearings and ultimate decision on his speedy trial motion until December, 1998, and on his motion to dismiss the charges under G. L. c. 272, § 29, until February and April, 1999, respectively.[8] Even if his trial might have commenced earlier, see *Commonwealth* v. *Tanner*, 417 Mass. 1, 3-4 (1994), or even if he might have benefited from hiring an investigator during this period or from earlier decisions on these motions, much of the additional delay that Vasquez now attempts to use in his favor must nonetheless be counted against him.

Vasquez's contention that he was not adequately informed about the consequences of agreed-upon continuances on his speedy trial rights, or those arising from his failure to attend court proceedings, merits a slightly more detailed answer. In *Commonwealth* v. *McCants*, 20 Mass. App. Ct. 294, 299-300

---

[8]We do not attempt to resolve any arguments about, or calculate, the number of additional days that might be excluded or counted during this period because the parties differ markedly in their interpretations of Mass.R.Crim.P. 36(b)(2)(A)(v) and (vii). See note 6, *supra*, and accompanying text. Both we and the Supreme Judicial Court have previously noted, and at times reserved judgment on, application of these sections, given some of the ambiguities that inhere in them. See, e.g., *Barry* v. *Commonwealth*, 390 Mass. at 294-299; *Commonwealth* v. *Moore*, 20 Mass. App. Ct. 1, 5 n.7, 6 n.8 (1985); *Commonwealth* v. *McCants*, 20 Mass. App. Ct. 294, 295 n.2 (1985); *Commonwealth* v. *McDonald*, 21 Mass. App. Ct. 368, 369, 371-375 (1986); *Commonwealth* v. *Wysocki*, 28 Mass. App. Ct. 45, 50 n.3 (1989); *Commonwealth* v. *Sheridan*, 40 Mass. App. Ct. 700, 703 (1996). See also 1 Blumenson, Fisher & Kanstroom, Massachusetts Criminal Practice § 23.2B(1), at 797 n.54 (2d ed. 1998) (collecting other citations to Mass.R.Crim.P. 36(b)(2)(A)(v), including analogous cases under prior statute, G. L. c. 277, § 72A).

(1985), we rejected a similar argument: that continuances to which defense counsel acceded were not excluded unless the defendant specifically consented to the delay or instructed his attorney to obtain them. There, we indicated that

> "such a requirement would place impractical and unreasonable burdens on the trial court and on the lawyer-client relationship. In the urban trial sessions, it is not unusual for more than 100 matters to come on daily, including assignments, reports of pretrial conferences, bail reviews, trial calls, changes of plea, motions to dismiss, and motions to suppress. If counsel could not agree to scheduling arrangements without prior consultation with their clients, the results would be more occasions of delay and occasional paralysis." (footnote omitted).

*Id.* at 299. In *McCants*, though, the defendant did not complain about ineffective assistance of counsel. *Id.* at 300. We instead glossed over the point, stating that a defendant may dismiss counsel, but "an informed defendant cannot expect to accept the lawyer's services, refrain from signaling dissatisfaction, and be able to contend later that he should not be bound by selected representations that the lawyer has made." *Id.* at 300-301.

So far as the instant case is concerned, nothing in the record indicates a breakdown in communication between lawyer and client. Although Vasquez now complains that he was inadequately informed of the consequences stemming from agreeing to continuances or his failure to attend hearings, he made no earlier attempt to signal that he was "in the dark," *id.* at 300, or dissatisfied with the lengthy course of pretrial proceedings in his case, until the filing of his speedy trial motion. Vasquez's affidavits, filed with his motion for new trial, are, as noted, suspiciously self-serving, inconsistent, untimely, and conclusory. See note 3, *supra*; *Commonwealth* v. *Wheeler*, 52 Mass. App. Ct. 631, 639-640 (2001).

Conspicuously absent in these circumstances is an affidavit from defense trial counsel. See *Commonwealth* v. *McCormick*, 48 Mass. App. Ct. 106, 107-109 (1999). We emphasize that Vasquez was free on bail during pretrial proceedings in this case. In large measure, the docket does not reflect whether Vasquez attended court on those days when his trial counsel

agreed to continuances in person, as opposed to registering agreement by phone. The judge addressing Vasquez's new trial motion noted that Vasquez was in court when his speedy trial motion was heard. While we wrote in *Commonwealth* v. *Mc-Cants*, 20 Mass. App. Ct. at 301 n.8, that it is "good practice" when defendants are in custody "to inform the[m] that the period of continuance will not be counted" in establishing the time limit for trial, we do not think that a similar obligation should attach when the defendant is not in custody and, unless excused, is required to attend. Cf. *United States* v. *Loud Hawk*, 474 U.S. 302, 310-312 (1986) (suggesting different constitutional speedy trial analysis when defendant is free after pretrial dismissal of charges against him, after allowance of suppression motion, or when defendant is subject to bail). We therefore reject Vasquez's argument concerning trial counsel's alleged ineffectiveness in not informing him of the consequences stemming from agreed-upon continuances or his failure to appear in court.

4. *Failure to instruct.* Vasquez's final argument is that the trial judge erred in failing to instruct the jury that the defendant's honest and reasonable belief that the victim consented to the sexual encounters in this case amounted to a defense to the charge of rape. Because Vasquez made no request for such an instruction at trial, we consider whether a substantial risk of a miscarriage of justice resulted from the absence of such an instruction. *Commonwealth* v. *Ascolillo*, 405 Mass. 456, 463-464 (1989).

The evidence presented to the jury detailed several encounters of hugging and kissing between Vasquez and the male victim over a period of several months in 1994; there was also testimony that Vasquez would put his penis in the victim's mouth on some of those occasions. The parties concentrate in their briefs on a specific incident where the victim woke up to Vasquez putting his penis inside the victim's anus. The victim did not consent to this penetration, and rolled over to get away from the defendant. The victim testified that he and Vasquez had been hugging and kissing before falling asleep. Vasquez, at that time twenty-four years old, was the biological son of the victim's foster mother, and was regarded by the victim as a

"father figure." The victim was fifteen years old during his stay with Vasquez's mother, and this incident occurred one day after the victim turned sixteen.

The only other sexual encounter that included penetration upon which there was testimony was a prior incident when Vasquez attempted to insert his penis into the victim's anus. The victim testified that "[i]t felt like someone [was] jabbing a knife" into him, and that he jumped out of bed and ran into the bathroom to get away from the defendant.

In both of these instances, the victim's reaction clearly demonstrated a lack of consent toward penetration. In *Commonwealth* v. *Lopez*, 433 Mass. 722, 724-732 (2001), decided after the trial in this case, the Supreme Judicial Court rejected the defendant's argument for a similar instruction based on his reasonable but mistaken belief that the victim had consented. The court rejected the instruction on practical grounds: "A shift in focus from the victim's to the defendant's state of mind might require victims to use physical force in order to communicate an unqualified lack of consent to defeat any honest and reasonable belief as to consent." *Id.* at 729. We think the same rationale follows with equal force here. "Although the Commonwealth must prove lack of consent, the 'elements necessary for rape do not require that the defendant intend the intercourse be without consent.' " *Id.* at 727 (citations omitted). Indeed, the Supreme Judicial Court has distinguished the lack of consent element from the force required for rape, which is only that required to effect penetration. *Id.* at 729, citing *Commonwealth* v. *Helfant*, 398 Mass. 214, 220-222 (1986).

We cannot say that Vasquez's belief that the victim consented would have been reasonable in the circumstances presented here, when Vasquez first penetrated the victim *in his sleep*, with knowledge of the victim's adverse reaction to the prior attempt. See *Commonwealth* v. *Helfant*, 398 Mass. at 220-222 (Commonwealth need not prove that victim resisted when victim was impaired or unable to consent). Cf. *Commonwealth* v. *Ascolillo*, 405 Mass. at 464; *Commonwealth* v. *Simcock*, 31 Mass. App. Ct. 184, 195 (1991) (discussing proper instruction on issue of consent in rape cases where victim was incapacitated in some way). In the present case, an instruction based on the defendant's

allegedly honest and reasonable belief was not warranted. We also note that Vasquez's argument for such an instruction would force him largely to concede to the prosecution the element of consent in his relationship with the victim. See *Commonwealth v. McCrae*, 54 Mass. App. Ct. 27, 29-30 (2002). We therefore see no error.

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*