## COMMONWEALTH vs. KENNY LOPEZ.

Hampden. December 6, 2000. - April 17, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Rape. Practice, Criminal,* Instructions to jury. *Consent. Mistake.*

This court declined to recognize, as a mistake of fact "defense" to the crime
of rape, a criminal defendant's asserted honest and reasonable belief as to
a complainant's consent. [724-732]

INDICTMENTS found and returned in the Superior Court Depart-
ment on June 10, 1998.

The cases were tried before *Thomas J. Curley, Jr.,* J.

The Supreme Judicial Court granted an application for direct
appellate review.

*Carlo A. Obligato,* Committee for Public Counsel Services,
for the defendant.

*Thomas H. Townsend,* Assistant District Attorney, for the
Commonwealth.

SPINA, J. The defendant, Kenny Lopez, was convicted on two
indictments charging rape and one indictment charging indecent
assault and battery on a person over the age of fourteen years.
We granted his application for direct appellate review. The
defendant claims error in the judge's refusal to give a mistake
of fact instruction to the jury. He asks us to recognize a
defendant's honest and reasonable belief as to a complainant's
consent as a defense to the crime of rape, and to reverse his
convictions and grant him a new trial. Based on the record
presented, we decline to do so, and affirm the convictions.

1. *Background.* We summarize facts that the jury could have
found. On May 8, 1998, the victim, a seventeen year old girl,
was living in a foster home in Springfield. At approximately 3
P.M., she started walking to a restaurant where she had planned
to meet her biological mother. On the way, she encountered the

defendant. He introduced himself, asked where she was going, and offered to walk with her. The victim met her mother and introduced the defendant as her friend. The defendant said that he lived in the same foster home as the victim and that "they knew each other from school." Sometime later, the defendant left to make a telephone call. When the victim left the restaurant, the defendant was waiting outside and offered to walk her home. She agreed.

The two walked to a park across the street from the victim's foster home and talked for approximately twenty to thirty minutes. The victim's foster sisters were within earshot, and the victim feared that she would be caught violating her foster mother's rules against bringing "a guy near the house." The defendant suggested that they take a walk in the woods nearby. At one point, deep in the woods, the victim said that she wanted to go home. The defendant said, "Trust me," and assured her that nothing would happen and that he would not hurt her. The defendant led the victim down a path to a secluded area.

The defendant asked the victim why she was so distant and said that he wanted to start a relationship with her. She said that she did not want to "get into any relationship." The defendant began making sexual innuendos to which the victim did not respond. He grabbed her by her wrist and began kissing her on the lips. She pulled away and said, "No, I don't want to do this." The defendant then told the victim that if she "had sex with him, [she] would love him more." She repeated, "No, I don't want to. I don't want to do this." He raised her shirt and touched her breasts. She immediately pulled her shirt down and pushed him away.

The defendant then pushed the victim against a slate slab, unbuttoned her pants, and pulled them down. Using his legs to pin down her legs, he produced a condom and asked her to put it on him. The victim said, "No." The defendant put the condom on and told the victim that he wanted her to put his penis inside her. She said, "No." He then raped her, and she began to cry. A few minutes later, the victim made a "jerking move" to her left. The defendant became angry, turned her around, pushed her face into the slate, and raped her again. The treating physician described the bruising to the victim's knees as

"significant." The physician opined that there had been "excessive force and trauma to the [vaginal] area" based on his observation that there was "a lot of swelling" in her external vaginal area and her hymen had been torn and was "still oozing." The doctor noted that in his experience it was "fairly rare" to see that much swelling and trauma.

The defendant told the victim that she "would get in a lot of trouble" if she said anything. He then grabbed her by the arm, kissed her, and said, "I'll see you later." The victim went home and showered. She told her foster mother, who immediately dialed 911. The victim cried hysterically as she spoke to the 911 operator.

The defendant's version of the encounter was diametrically opposed to that of the victim. He testified that the victim had been a willing and active partner in consensual sexual intercourse. Specifically, the defendant claimed that the victim initiated intimate activity, and never once told him to stop. Additionally, the defendant testified that the victim invited him to a party that evening so that he could meet her friends. The defendant further claimed that when he told her that he would be unable to attend, the victim appeared "mildly upset."

Before the jury retired, defense counsel requested a mistake of fact instruction as to consent.[1] The judge declined to give the instruction, saying that, based "both on the law, as well as on the facts, that instruction is not warranted." Because the defendant's theory at trial was that the victim actually consented and not that the defendant was "confused, misled, or mistaken" as to the victim's willingness to engage in sexual intercourse, the judge concluded that the ultimate question for the jury was simply whether they believed the victim's or the defendant's version of the encounter. The decision not to give the instruction provides the basis for this appeal.

2. *Mistake of fact instruction.* The defendant claims that the judge erred in failing to give his proposed mistake of fact

---

[1]The defendant proposed the following instruction: "If the Commonwealth has not proved beyond a reasonable doubt that the defendant was not motivated by a reasonable and honest belief that the complaining witness consented to sexual intercourse, you must find the defendant not guilty."

instruction.[2] The defendant, however, was not entitled to this instruction. In *Commonwealth* v. *Ascolillo*, 405 Mass. 456 (1989), we held that the defendant was not entitled to a mistake of fact instruction, and declined to adopt a rule that "in order to establish the crime of rape the Commonwealth must prove *in every case* not only that the defendant intended intercourse but also that he did not act pursuant to an honest and reasonable belief that the victim consented" (emphasis added). *Id.* at 463, quoting *Commonwealth* v. *Grant*, 391 Mass. 645, 651 (1984). Neither the plain language of our rape statute nor this court's decisions prior to the *Ascolillo* decision warrant a different result.

A fundamental tenet of criminal law is that culpability requires a showing that the prohibited conduct (actus reus) was committed with the concomitant mental state (mens rea) prescribed for the offense. See, e.g., *Morissette* v. *United States*, 342 U.S. 246, 250 (1952) ("The contention that an injury can amount to a crime only when inflicted ·by intention is no provincial or transient notion"). The mistake of fact "defense" is available where the mistake negates the existence of a mental state essential to a material element of the offense.[3] See Model Penal Code § 2.04(1)(a) (1985) ("Ignorance or mistake as to a

---

[2]Some commentators point out that a reasonable and honest belief as to consent and a reasonable mistake of consent are "slightly different defenses." Note, Rethinking the Reasonable Belief Defense to Rape, 100 Yale L.J. 2687, 2688 n.9 (1991). "A defendant's reasonable belief of consent may be consistent with actual consent, while a reasonable mistake implies that the victim did not consent." *Id.* "The defense of 'mistake of fact' as to consent is similar to, but not precisely coextensive with, the defense of 'honest and reasonable belief' as to consent." Cavallaro, A Big Mistake: Eroding the Defense of Mistake of Fact About Consent in Rape, 86 J. Crim. L. & Criminology 815, 815 n.1 (1996). The distinction between the two theories has little impact on this appeal, and therefore, we refer to the defendant's proposed instruction of a reasonable and honest belief as to consent as a "mistake of fact" instruction.

[3]Thus understood, a mistake of fact is not truly a defense, but rather a means of demonstrating that the prosecution has failed to prove beyond a reasonable doubt the essential elements of the crime. See Keedy, Ignorance and Mistake in the Criminal Law, 22 Harv. L. Rev. 75, 86 n.4 (1908) ("Such defenses as mistake and alibi, each of which denies one of the elements of guilt, must not in this connection be confounded with defenses of an affirmative character under which the defendant admits the commission of the crime but claims exemption from punishment because of some excusing fact, such

matter of fact or law is a defense if: . . . the ignorance or mistake negatives the purpose, knowledge, belief, recklessness or negligence required to establish a material element of the offense"). In determining whether the defendant's honest and reasonable belief as to the victim's consent would relieve him of culpability, it is necessary to review the required elements of the crime of rape.

At common law, rape was defined as "the carnal knowledge of a woman forcibly and against her will." 4 W. Blackstone, Commentaries 210. See *Commonwealth* v. *Chretien*, 383 Mass. 123, 127 (1981). Since 1642, rape has been proscribed by statute in this Commonwealth. See *Commonwealth* v. *Burke*, 105 Mass. 376, 380 (1870) (citing first rape statute codified at 2 Mass. Col. Rec. 21). While there have been several revisions to this statute, the definition and the required elements of the crime have remained essentially unchanged since its original enactment. The current rape statute, G. L. c. 265, § 22 (*b*), provides in pertinent part:

> "Whoever has sexual intercourse or unnatural sexual intercourse with a person and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury, shall be punished by imprisonment in the state prison for not more than twenty years."

This statute follows the common-law definition of rape, and requires the Commonwealth to prove beyond a reasonable doubt that the defendant committed (1) sexual intercourse (2) by force or threat of force and against the will of the victim. See *Commonwealth* v. *Sherry*, 386 Mass. 682, 687 (1982) ("The essence of the crime of rape, whether aggravated or unaggravated, is sexual intercourse with another compelled by force and against the victim's will or compelled by threat of bodily injury").

As to the first element, there has been very little disagreement. Sexual intercourse is defined as penetration of the victim,

as self-defense"). See also W.R. LaFave & A.W. Scott, Jr., Substantive Criminal Law § 5.1(a), at 406 (2d ed. 1986) ("[i]nstead of speaking of ignorance or mistake of fact, it would be just as easy to note simply that the defendant cannot be convicted when it is shown that he does not have the mental state required by law for commission of that particular offense").

regardless of degree. The second element has proven to be more complicated. We have construed the element, "by force and against his will," as truly encompassing two separate elements each of which must independently be satisfied. See generally *Commonwealth* v. *Caracciola*, 409 Mass. 648, 653-654 (1991) (stating elements of "force" and "against his will" not superfluous, but instead must be read together). Therefore, the Commonwealth must demonstrate beyond a reasonable doubt that the defendant committed sexual intercourse (1) by means of physical force, *Commonwealth* v. *Sherry*, *supra* at 696; nonphysical, constructive force, *Commonwealth* v. *Caracciola*, *supra* at 653-655; or threats of bodily harm, either explicit or implicit, *Commonwealth* v. *Sherry*, *supra* ("threats of bodily harm, inferred or expressed"); and (2) at the time of penetration, there was no consent.

Although the Commonwealth must prove lack of consent, the "elements necessary for rape do not require that the defendant intend the intercourse be without consent." *Commonwealth* v. *Grant*, 391 Mass. 645, 650 (1984). See *Commonwealth* v. *Cordeiro*, 401 Mass. 843, 851 n.11 (1988) ("The Commonwealth is not required to prove either that the defendant intended the sexual intercourse be without consent or that he had actual knowledge of the victim's lack of consent"); *Commonwealth* v. *Lefkowitz*, 20 Mass. App. Ct. 513, 518 (1985) ("As the Supreme Judicial Court made clear in *Commonwealth* v. *Grant*, [*supra* at 649,] the crime of rape . . . does not require for conviction proof that the defendant harbored a 'specific intent that the intercourse be without consent' "). Historically, the relevant inquiry has been limited to consent in fact, and no mens rea or knowledge as to the lack of consent has ever been required. See *Commonwealth* v. *Burke*, *supra* at 377 ("The simple question, expressed in the briefest form, is, Was the [victim] willing or unwilling?"). See also *Commonwealth* v. *Lefkowitz*, *supra* at 519 ("the prosecution has proved rape if the jury concludes that the intercourse was in fact nonconsensual [that is, effectuated by force or by threat of bodily injury], without any special emphasis on the defendant's state of mind").

A mistake of fact as to consent, therefore, has very little application to our rape statute. Because G. L. c. 265, § 22, does

not require proof of a defendant's knowledge of the victim's lack of consent or intent to engage in nonconsensual intercourse as a material element of the offense, a mistake as to that consent cannot, therefore, negate a mental state required for commission of the prohibited conduct. Any perception (reasonable, honest, or otherwise) of the defendant as to the victim's consent is consequently not relevant to a rape prosecution. See Cavallaro, A Big Mistake: Eroding the Defense of Mistake of Fact About Consent in Rape, 86 J. Crim. L. & Criminology 815, 818 (1996) (mistake of fact instruction is "available as a defense to a particular charge only where the definition of the offense makes a defendant's mental state as to a particular element material").

This is not to say, contrary to the defendant's suggestion, that the absence of any mens rea as to the consent element transforms rape into a strict liability crime. It does not. See *Commonwealth* v. *Cordeiro*, 401 Mass. 843, 850-851 n.11 (1988); *Commonwealth* v. *Grant, supra* at 649-651. Rape, at common law and pursuant to G. L. c. 265, § 22, is a general intent crime, *Commonwealth* v. *Troy*, 405 Mass. 253, 260 (1989), citing *Commonwealth* v. *Grant, supra* at 649-650, and proof that a defendant intended sexual intercourse by force coupled with proof that the victim did not in fact consent is sufficient to maintain a conviction. See Bryden, Redefining Rape, 3 Buff. Crim. L. Rev. 317, 325 (2000) ("At common law, rape was a 'general intent' crime: The requisite intention was merely to perform the sexual act, rather than have nonconsensual intercourse").

Other jurisdictions have held that a mistake of fact instruction is necessary to prevent injustice. New Jersey, for instance, does not require the force necessary for rape to be anything more than what is needed to accomplish penetration. See *In re M.T.S.*, 129 N.J. 422, 444 (1992) ("physical force in excess of that inherent in the act of sexual penetration is not required for such penetration to be unlawful"). Thus, an instruction as to a defendant's honest and reasonable belief as to consent is available in New Jersey to mitigate the undesirable and unforeseen consequences that may flow from this construction. By contrast, in this Commonwealth, unless the putative victim has been rendered incapable of consent, the prosecution must prove that

the defendant compelled the victim's submission by use of physical force; nonphysical, constructive force; or threat of force. See *Commonwealth* v. *Caracciola*, 409 Mass. 648, 653 (1991). See also *Commonwealth* v. *Helfant*, 398 Mass. 214, 220-222 (1986) ("Because the victim there was 'so drunk as to be utterly senseless and incapable of consenting,' the court upheld the conviction based on proof only of 'such force as was necessary to effect the [penetration]' ") (citation omitted). Proof of the element of force, therefore, should negate any possible mistake as to consent.[4] See *Johnson* v. *State*, 204 Ga. App. 369 (1992). See also Estrich, Rape, 95 Yale L.J. 1087, 1098-1099 (1986) ("The requirement that sexual intercourse be accompanied by force or threat of force to constitute rape provides a [defendant] with some protection against mistakes as to consent").

We also have concerns that the mistake of fact defense would tend to eviscerate the long-standing rule in this Commonwealth that victims need not use any force to resist an attack. See *Commonwealth* v. *Sherry*, *supra* at 688, citing *Commonwealth* v. *McDonald*, 110 Mass. 405, 406 (1872). A shift in focus from the victim's to the defendant's state of mind might require victims to use physical force in order to communicate an unqualified lack of consent to defeat any honest and reasonable belief as to consent. The mistake of fact defense is incompatible with the evolution of our jurisprudence with respect to the crime of rape.

We are cognizant that our interpretation is not shared by the

---

[4]In the case before us, the Commonwealth's evidence of force consisted of physical force, as described by the victim and corroborated by medical examination. The trial judge properly instructed as to the amount of force necessary to support a conviction. The judge, in essence, gave the model jury instruction as to the required element of force. We quote the model instruction, in pertinent part:                                        .

"The second element the Commonwealth must prove beyond a reasonable doubt is that the natural or unnatural sexual intercourse was accomplished by force or by threat of bodily injury and against the complainant's will. The force needed for rape may, depending on the circumstances, be constructive force, as well as physical force, violence or threat of bodily harm."

majority of other jurisdictions. States that recognize a mistake of fact as to consent generally have done so by legislation. Some State statutes expressly require a showing of a defendant's intent as to nonconsent. Alaska, for example, requires proof of a culpable state of mind. "Lack of consent is a 'surrounding circumstance' which under the Revised Code, requires a complementary mental state as well as conduct to constitute a crime." *Reynolds* v. *State*, 664 P.2d 621, 625 (Alaska 1983). Because no specific mental state is mentioned in Alaska's statute governing sexual assault in the first degree, the State "must prove that the defendant acted 'recklessly' regarding his putative victim's lack of consent." *Id.* So understood, an honest and reasonable mistake as to consent would negate the culpability requirement attached to the element of consent. See Colo. Rev. Stat. § 18-3-402(1) (1999) ("Any actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits sexual assault . . ."); Or. Rev. Stat. § 161.115(2) (1999) ("Except as provided in [Or. Rev. Stat. §] 161.105, if a statute defining an offense does not prescribe a culpable mental state, culpability is nonetheless required and is established only if a person acts intentionally, knowingly, recklessly or with criminal negligence"); Tex. Penal Code § 22.021(a)(1)(A)(i) (West Supp. 2001) ("A person commits an offense if the person . . . intentionally or knowingly . . . causes the penetration of the anus or female sexual organ of another person by any means, without that person's consent").

The New Jersey statute defines sexual assault (rape) as "any act of sexual penetration engaged in by the defendant without the affirmative and freely-given permission of the victim to the specific act of penetration." *In re M.T.S.*, *supra* at 444. A defendant, by claiming that he had permission to engage in sexual intercourse, places his state of mind directly in issue. The jury must then determine "whether the defendant's belief that the alleged victim had freely given affirmative permission was reasonable." *Id.* at 448.

The mistake of fact "defense" has been recognized by judicial decision in some States. In 1975, the Supreme Court of California became the first State court to recognize a mistake of fact defense in rape cases. See *People* v. *Mayberry*, 15 Cal. 3d

143 (1975) (en banc). Although the court did not make a specific determination that intent was required as to the element of consent, it did conclude that, "[i]f a defendant entertains a reasonable and bona fide belief that a prosecutrix [*sic*] voluntarily consented . . . to engage in sexual intercourse, it is apparent he does not possess the wrongful intent that is a prerequisite under Penal Code section 20 to a conviction of . . . rape by means of force or threat." *Id.* at 153. Thus, the intent required is an intent to engage in nonconsensual sexual intercourse, and the State must prove that a defendant intentionally engaged in intercourse and was at least negligent regarding consent.[5]

Other State courts have employed a variety of different constructions in adopting the mistake of fact defense. See *State v. Smith*, 210 Conn. 132, 142 (1989) ("We arrive at that result, however, not on the basis of our penal code provision relating to a mistake of fact . . . but on the ground that whether a complainant should be found to have consented depends upon how her behavior would have been viewed by a reasonable person under the surrounding circumstances"); *State v. Koonce*,

---

[5]Since that time, the Supreme Court of California has retreated from its original holding and steadily has eroded the defense. Today, the defense is available only if there is "substantial evidence of equivocal conduct that would have led a defendant to reasonably and in good faith believe consent existed where it did not." *People v. Williams*, 4 Cal. 4th 354, 362 (1992). Thus, as a threshold matter, the judge, not the jury, must find that the evidence with respect to consent is equivocal. Unless this showing is made, the "jury will be foreclosed from considering evidence that the defendant honestly and reasonably believed that there was consent, even if that jury would have credited such evidence." Cavallaro, *supra* at 852. This requirement, in effect, virtually eliminates the mistake of fact doctrine because "[t]hose defendants who, as a factual matter, would present the strongest mistake case, by testifying to conduct that could be characterized as 'unequivocal,' are precluded by the rule of *Williams* from presenting that defense to the jury." *Id.* at 838. On the other hand, a "defendant who describes an encounter in which the complainant's conduct was admittedly equivocal as to consent essentially concedes that point and is doomed to almost certain conviction." *Id.* at 838-839.

In the present case, there was no evidence of equivocal conduct. The complaining witness testified that she had told the defendant, repeatedly and explicitly, that she did not want any form of sexual contact; that she tried to get away from the defendant; and that she cried during the forced intercourse. The defendant testified that the complaining witness was the one to initiate intimate contact; that she participated actively; and that she suggested they get together again later that evening.

731 S.W.2d 431, 437 n.2 (Mo. Ct. App. 1987) (construing rape statute to require defendant acted at least recklessly as to consent).

However, the minority of States sharing our view is significant. See *People* v. *Witte*, 115 Ill. App. 3d 20, 26 n.2 (1983) ("whether the defendant intended to commit the offense[s] without the victim's consent is not relevant, the critical question being whether the victim did, in fact, consent. This involves her mental state, not the defendant's"); *State* v. *Christensen*, 414 N.W.2d 843, 845-846 (Iowa 1987) ("[D]efendant's awareness of a putative sexual abuse victim's lack of consent is not an element of third-degree sexual abuse. . . . [I]t follows from this premise that a defendant's mistake of fact as to that consent would not negate an element of the offense"); *State* v. *Reed*, 479 A.2d 1291, 1296 (Me. 1984) ("The legislature, by carefully defining the sex offenses in the criminal code, and by making no reference to a culpable state of mind for rape, clearly indicated that rape compelled by force or threat requires no culpable state of mind"); *State* v. *Ayer*, 136 N.H. 191, 195 (1992); *Commonwealth* v. *Williams*, 294 Pa. Super. 93, 100 (1982) ("The crux of the offense of rape is force and lack of [the] victim's consent. . . . When one individual uses force or the threat thereof to have sexual relations with a person . . . and without the person's consent he has committed the crime of rape"). See also *People* v. *Hale*, 142 Mich. App. 451, 453 (1985); *State* v. *Elmore*, 54 Wash. App. 54, 56 (1989); *Brown* v. *State*, 59 Wis. 2d 200, 213-214 (1973). This case does not persuade us that we should recognize a mistake of fact as to consent as a defense to rape in *all* cases. See *Commonwealth* v. *Ascolillo*, *supra* at 463. Whether such a defense might, in some circumstances, be appropriate is a difficult question that we may consider on a future case where a defendant's claim of reasonable mistake of fact is at least arguably supported by the evidence. This is not such a case.

*Judgments affirmed.*