NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-583                                        Appeals Court

COMMONWEALTH  vs.  RYDER CHILCOFF.

No. 22-P-583.

Hampshire.     May 9, 2023. – August 2, 2023.

Present: Sacks, Shin, & D'Angelo, JJ.


Rape. Constitutional Law, Admissions and confessions,
    Voluntariness of statement. Consent. Deoxyribonucleic
    Acid. Evidence, Admissions and confessions, Intoxication,
    Sexual conduct, Voluntariness of statement. Practice,
    Criminal, Admissions and confessions, Instructions to jury.



Indictment found and returned in the Superior Court
Department on March 7, 2018.

A pretrial motion to suppress evidence was heard by Richard
J. Carey, J., and the case was tried before him.

Ashley P. Allen for the defendant.
Bethany C. Lynch, Assistant District Attorney, for the
Commonwealth.


D'ANGELO, J. A jury in the Superior Court convicted the

defendant of rape, in violation of G. L. c. 265, § 22 (b). The

charge stems from an encounter between the victim and the

defendant, Ryder Chilcoff, when the victim entered the

defendant's dormitory room. The victim was unsteady, wobbling, stumbling, and was confused as to whose room she was in. After being in the room for some time, the victim took the defendant's hands and rubbed them on her chest and vaginal area. The defendant asked the victim what she wanted to do, and she replied, "I want you" and "I want to stay here." The defendant thereafter had sexual intercourse with the victim.

At trial, the defendant requested a jury instruction on what he labels as a mistake of fact, asserting that he actually and reasonably believed that the victim was capable of consenting to the intercourse. See Commonwealth v. Lopez, 433 Mass. 722, 725 n.2 (2001) ("we refer to the defendant's proposed instruction of a reasonable and honest belief as to consent as a 'mistake of fact' instruction"). The request was denied.

The defendant challenges his conviction on the following grounds: (a) his motion to suppress his statements should have been allowed; (b) his motion for a required finding of not guilty should have been allowed because there was insufficient evidence presented that the victim was incapable of consenting because of intoxication; (c) the judge erred by excluding evidence that deoxyribonucleic acid (DNA) testing on the underpants that the victim was wearing during her examination by a sexual assault nurse examiner (SANE) five days after the rape showed the presence of another person's sperm; (d) the judge

incorrectly excluded text messages between the victim and her sister about the victim blacking out in the past; and (e) the jury instructions were insufficient on the issue of the defendant's belief as to the victim's capacity to consent.  We affirm the defendant's conviction.

1.  Facts.  The jury could have found the following facts. The defendant and the victim were both undergraduate students at the University of Massachusetts in Amherst in 2017.  The victim lived in in a particular dormitory, and the defendant's room was directly above the victim's.  On December 8, 2017, the victim attended a "pregame" party at approximately 9:15 P.M. where she drank four to six "nip" bottles of ninety-nine proof vodka within thirty minutes.  She also "shot gunned" a can of beer and consumed additional amounts of beer while playing a drinking game.[1]  The victim and her friends then left the party to go to a fraternity house.  The victim was "stumbling . . . drunk" and "wobbling."  The victim did not remember leaving the party; the last thing she remembered was playing the drinking game.

After she left the fraternity house, fellow students offered to help her go back to her dormitory because they did

---

[1] Shotgunning is defined as "to drink (something, especially a beer) quickly, by puncturing a hole in the bottom of a can, placing one's mouth over the hole, and then opening the top of the can slightly, causing the liquid to drain down one's throat."  http://www.dictionary.com/browse/shotgun [https://perma.cc/54DM-HKTY].

not believe she was in any condition to be walking alone.  They described the victim as unsteady on her feet, slurring her words, and unable to walk a straight line.  The victim had to hold on to someone for support and was not making sense when she spoke.  The fellow students walked the victim back to her dormitory and watched her go inside and get through the security process.

The victim went to the wrong floor of the dormitory and entered the defendant's room, which was directly above her own room.  The defendant was with his roommate and his roommate's friend (friend) watching a movie; none of them knew the victim.  After they told her she was in the wrong room, the victim stroked the friend's face with her hands and then left the room, at which point, the friend said, "Wow that girl is drunk."  The defendant was present when the friend made this statement.

A short time later, around midnight, the victim came back into the room, took off her shirt, and got into the defendant's bed.  The victim told the defendant, his roommate, and the friend that she lived in the Sylvan residential area, which is on the other side of campus, and was in this dormitory looking for her friend.  She also said that she did not know where she was and then upon being asked if she knew what room she was in, gave her own room number rather than the number of the room where they in fact were.  She was unsteady and wobbling, and her

speech was slurred. While she was in the defendant's bed, she spilled water on herself, and then fell asleep and was snoring. The defendant's roommate thought she was so intoxicated that he feared she would vomit on the defendant's bed.

A short time later, in the presence of the defendant's roommate, the victim took the defendant's hands and rubbed them on her chest and vaginal area. The defendant asked the victim what she wanted to do, and she replied, "I want you" and "I want to stay here." The defendant's roommate commented, "just because she's saying it doesn't mean it's okay." The roommate also asked the defendant if he should get the resident assistant to help get the victim out of the room and the defendant declined the invitation. When the defendant's roommate asked what the defendant wanted him to do, the defendant responded by motioning for the roommate to leave the room, which the roommate then did. A short time later, the defendant had intercourse with the victim.

The defendant then sent his roommate a text message and apologized. When the roommate returned to the room, he heard the victim snoring; both he and the defendant also went to sleep. The defendant left the room in the early morning hours to catch a bus to New York City for a preplanned visit. The victim woke up later that morning in the defendant's room with no memory of any of the events of the previous evening after

leaving the pregame party and did not know where she was. While searching for her clothing, she and the defendant's roommate found a used condom; testing revealed both the defendant's and the victim's DNA. The victim did not find the underpants she had been wearing the previous night and never saw them again. The victim left the defendant's room and returned to her room one floor below. Her vaginal area was sore, she had chest pain, and she believed that someone had had sex with her while she was in the room upstairs.

During the police investigation, the defendant was questioned by the police and gave an audio-recorded statement. The defendant admitted that the victim had entered his room and seemed to think that it was her room, but that after she made sexual advances toward him, they engaged in what he believed were consensual sexual relations. As we discuss later, prior to trial the defendant filed a motion to suppress the statement, which was denied.

At the close of all the evidence, defense counsel requested a jury instruction that "[t]he defendant is not guilty of this crime if he actually and reasonably believed that the [c]omplainant was capable of consenting to sexual intercourse even if that belief was wrong." The judge declined to give the requested instruction, but instead instructed the jury substantially in accordance with the proposed jury instruction

provided by the Supreme Judicial Court in Commonwealth v. Blache, 450 Mass. 583, 595 n.19 (2008), by instructing the jury that they "must consider whether the defendant actually knew or a reasonable person under the circumstances would have known that the complainant was unable to consent."

The defendant was convicted of rape and he timely appealed.

2.  Discussion.  a.  Motion to suppress.  i.  Custody.  The defendant claims that the judge erred in ruling that the defendant was not in custody at the time of his interview by the police and therefore not entitled to Miranda warnings.  "Miranda warnings are required only when a suspect is subject to custodial interrogation."  Commonwealth v. Simon, 456 Mass. 280, 287, cert. denied, 562 U.S. 874 (2010).  In assessing custody, "the court considers several factors:  (1) the place of the interrogation; (2) whether the officers have conveyed to the person being questioned any belief or opinion that that person is a suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the person being interviewed; and (4) whether, at the time the incriminating statement was made, the person was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with an arrest."  Commonwealth v. Groome, 435 Mass. 201, 211-212 (2001).  The

Groome factors merely provide a framework for assessing the ultimate question:  "whether the defendant was subjected to 'a formal arrest or restraint of freedom of movement of the degree associated with a formal arrest.'"  Commonwealth v. Medina, 485 Mass. 296, 301 (2020), quoting Thompson v. Keohane, 516 U.S. 99, 112 (1995).  In this case, all of the factors support the judge's conclusion that the defendant was not in custody at the time he spoke to the police.

When reviewing a ruling on a motion to suppress, we are bound by the judge's subsidiary findings of fact, unless they are clearly erroneous, but we conduct an independent review of the judge's ultimate findings and conclusions of law.  See Commonwealth v. Tremblay, 480 Mass. 645, 652 (2018) (voluntariness of defendant's Miranda waiver and statements during custodial interrogation); Commonwealth v. Carnes, 457 Mass. 812, 818-819 (2010) (whether defendant was subject to custodial interrogation).  The place of the questioning was in a common room in the defendant's dormitory, across from his own room.  The doors were unlocked, the room was large, and numerous individuals were able to come and go during the interview. Before and during the interview, the officers never suggested to the defendant that he was suspected of a crime; rather, the judge found that at the time of the interview, the officers were

"just starting to sort out each party's story about the night of the alleged incident."

The judge's findings that the questions were not accusatory and not aggressive is amply supported by the record and thus not clearly erroneous. Lastly, the defendant was not restrained during the interview, was told at the outset by the police that he could leave at any time, and was not arrested at the end of the interview. In fact, he was not charged with the crime until one month after his questioning. There was no error in the judge's ruling that the defendant was not in custody and thus not entitled to Miranda warnings.

ii. Voluntariness. The defendant also argues that the judge erred in finding that the defendant's statement to the police was voluntary. The test for voluntariness is "whether, in light of the totality of the circumstances surrounding the making of the statement, the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act." Commonwealth v. Raymond, 424 Mass. 382, 395 (1997), quoting Commonwealth v. Selby, 420 Mass. 656, 663 (1995), S.C., 426 Mass. 168 (1997). Factors which can be relevant to the determination of voluntariness include the defendant's age, education, intelligence, emotional stability, experience with the criminal justice system, and any discussion of leniency or a deal by police or other promises or

inducements.  See Commonwealth v. Mandile, 397 Mass. 410, 413 (1986).  However, the presence of one or more factors suggesting involuntariness does not necessarily make a statement involuntary.  See Selby, supra at 664.

In this case, the defendant was a young adult and a college student, was not impaired by drugs or alcohol, was calm at all times, and answered all questions appropriately.  Although the police may have misled the defendant by indicating they had no intention of talking to his friends about the incident, as they later did, there was no evidence at the motion hearing to suggest that the defendant's statement was not "the product of a rational intellect and a free will" (quotation and citation omitted).  Selby, 420 Mass. at 662.  There was no error.

b.  Sufficiency of the evidence.  "When reviewing a motion for a required finding of not guilty, the 'question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' (emphasis in original)."  Commonwealth v. Grassie, 476 Mass. 202, 207 (2017), S.C., 482 Mass. 1017 (2019), quoting Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).  "The relevant question is whether the evidence would permit a jury to find guilt [beyond a reasonable doubt], not whether the evidence

requires such a finding."  Commonwealth v. Brown, 401 Mass. 745, 747 (1988).

The prosecution's theory at trial was that the victim lacked the ability to consent to intercourse since she was incapacitated by her intoxication.  See Blache, 450 Mass. at 591-592.  While "[t]he law does not require that the complainant have been rendered 'unconscious or nearly so' before she may be deemed past the point of consent," id. at 591, the "formulation -- because of the consumption of drugs or alcohol or for some other reason (for example, sleep, unconsciousness, mental retardation, or helplessness), the complainant was so impaired as to be incapable of consenting -- is intended to communicate to the jury that intoxication must be extreme before it can render a complainant incapable of consenting to intercourse" (quotation omitted).  Id. at 592 n.14.  Additionally, in such circumstances, the Commonwealth must prove [beyond a reasonable doubt] that the defendant knew or reasonably should have known that the complainant's condition rendered her incapable of consenting to the sexual act."  Id. at 594.

The defendant contends that no rational trier of fact could find beyond a reasonable doubt that he knew or reasonably should have known that the victim was in a condition that would render her incapable of consenting to sexual intercourse.  The defendant's argument that the evidence of the victim's

incapacity was not as strong as that found sufficient in other cases is unavailing.  The issue is whether the evidence here met the Latimore standard, not whether it was as strong as in other cases.  The evidence produced at trial was that the victim initially said she lived in another dormitory and then thought she was in her own room as opposed to the defendant's, she was swaying and needed help walking, her speech was slurred and sometimes nonsensical, and the friend commented, "Wow that girl is drunk."  When the victim said to the defendant, "I want you" and "I want to stay here," the defendant's roommate warned, "just because she's saying it doesn't mean it's okay," and offered to seek help from the resident assistant, which the defendant refused.  Additionally, the victim took off her shirt and fell asleep in the bed of the defendant, a stranger.

We are satisfied that this evidence was sufficient to support the finding that the victim was too intoxicated to consent to sexual activity and that the defendant knew or reasonably should have known that she was incapable of consent.

c.  Exclusion of DNA evidence.  Before trial, the defendant moved in limine to admit the results of a DNA test conducted on cuttings from the underpants that the victim was wearing at the time of the SANE examination, five days after the rape.  The results of the DNA test showed the presence of sperm fragments on the underpants that did not come from the defendant.  The

judge denied the motion pursuant to the rape shield statute, G. L. c. 233, § 21B.

The rape shield statute states that "[e]vidence of specific instances of a victim's sexual conduct . . . shall not be admissible except evidence of the victim's sexual conduct with the defendant or evidence of recent conduct of the victim alleged to be the cause of any physical feature, characteristic, or condition of the victim." G. L. c. 233, § 21B. See Mass. G. Evid. § 412(b) (2023). After a written motion, an offer of proof, and an in camera hearing, the evidence will be admitted only if "the court finds that the weight and relevancy of said evidence is sufficient to outweigh its prejudicial effect to the victim." G. L. c. 233, § 21B. See Commonwealth v. Joyce, 382 Mass. 222, 231 (1981) ("In the exercise of this discretion a trial judge should consider the important policies underlying the rape-shield statute"). As the proponent of the evidence, the defendant had the burden of proving admissibility. See Commonwealth v. Dunne, 394 Mass. 10, 16-17 (1985).

The defendant proffered no evidence that showed that the underpants collected at the SANE examination were the same as the ones that the victim was wearing on the night of the rape. At trial, the victim testified that she never again saw the underpants she had worn that night. Therefore, the judge did not abuse his discretion in ruling pursuant to G. L. c. 233,

§ 21B, that the probative value of the results of the DNA tests on sperm found on the underpants that the victim was wearing five days after the rape was not sufficient to outweigh its prejudicial effect on the victim.  See Mass. G. Evid. § 412(c)(2).  See also Commonwealth v. Gentile, 437 Mass. 569, 582 (2002) ("the victim's consent to intercourse with one man does not imply her consent in the case of another" [citation omitted]).  Cf. Commonwealth v. Cortez, 438 Mass. 123, 129-130 (2002) (victim's consensual intercourse forty-eight hours before the murder not relevant to explain fresh injuries to victim).  Similarly, the defendant's argument that the sperm on the underpants would tend to show that the victim had intercourse with a different individual on the night of the rape and explain the victim's testimony regarding the pain in her vaginal area is unavailing since the defendant proffered no evidence that they were the same underpants.

Finally, and contrary to the defendant's other argument, even if they had been the same underpants, evidence of intercourse earlier in the evening would have little if any relevance in showing that the victim had the capacity to consent to intercourse when she later encountered the defendant.  See Commonwealth v. Sa, 58 Mass. App. Ct. 420, 426 (2003) (judge properly excluded evidence that victim had consensual sex with boyfriend soon after rape; "the evidence would appeal to

unfounded and antiquated biases about what a 'virtuous' or 'chaste' woman would be likely to do in similar circumstances").

The judge properly exercised his discretion in excluding the evidence and there was no error.

d. Exclusion of text messages. The defendant attempted to introduce a text message exchange that the victim had with her sister the next morning, suggesting that the victim had prior experience with alcohol-induced blackouts. The judge allowed the defendant to introduce text messages in which the victim stated that she "didn't even drink that much" and "blacked," but excluded her text message stating, "I hate blacking," and her sister's response, "Sameeee." The defendant argues that the excluded text messages would have impeached the victim's trial testimony that on the day following the rape she was depressed and stayed in bed all day. He asserts that the exclusion of the "I hate blacking" text message unfairly left the jury with the impression that her condition on the night of the rape was an extraordinary event, of which the defendant took advantage. We are not persuaded.

Questions of the admissibility of evidence are "entrusted to the trial judge's broad discretion and are not disturbed absent palpable error." Commonwealth v. Sylvia, 456 Mass. 182, 192 (2010), quoting Commonwealth v. Simpson, 434 Mass. 570, 578-579 (2001). Relevant evidence may be excluded if its probative

value is substantially outweighed by its unfair prejudicial effect. See Gentile, 437 Mass. at 582-583. See also Mass. G. Evid. § 403 (2023). "We will conclude that there has been an abuse of discretion only if the judge has 'made a clear error of judgment in weighing' the factors relevant to the decision, . . . such that the decision falls outside the range of reasonable alternatives.'" Commonwealth v. Hammond, 477 Mass. 499, 505 (2017), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

Here, the judge carefully engaged in the required balancing of prejudicial impact and probative value and allowed the defendant to utilize some of the text messages on cross-examination. Contrary to the defendant's arguments, it is difficult to see how the victim's prior experiences with blacking out were probative of her state of mind at the time of the rape, her credibility, or any other issue in the case. The judge did not abuse his discretion in admitting some of the text messages and excluding others.

e. Jury instructions. Because the defendant requested a jury instruction and objected to the judge's ruling denying that instruction, we review for prejudicial error.[2] See Commonwealth v. Kelly, 470 Mass. 682, 687 (2015).

---

[2] The defendant proposed the following instruction in pertinent part:

A mistake of fact instruction "is available where the mistake negates the existence of a mental state essential to a material element of the offense."  Lopez, 433 Mass. at 725.  The Supreme Judicial Court held in Lopez that the defendant was not entitled to an instruction regarding an honest and reasonable mistake as to the victim's consent when the Commonwealth was

_____

"If a person is totally unable to consent to intercourse because of the consumption of alcohol or drugs or for some other similar reason and a defendant knows or reasonably should know that, then any resulting intercourse is without the person's consent. . . .  If, because of the consumption of alcohol, a person is so impaired as to be totally incapable of consenting to sexual intercourse, then intercourse that happens while the person is unable to consent is not consensual.  It is not enough for the Commonwealth to prove that the Complainant was intoxicated or under the influence of alcohol or drugs to some degree.  Instead, to prove that the Complainant was totally incapable of consenting to intercourse, the Commonwealth must prove that she was so impaired that she was totally unable to consent.

. . . .

"If you find that the Complainant was so impaired as to be totally unable to consent, then you have to decide whether the Commonwealth has proved that [the] Defendant knew or reasonably should have known that.  The Commonwealth has the burden to prove beyond a reasonable doubt that the defendant knew or reasonably should have known that [the] complainant was totally incapable of consenting.  To decide this, you must consider whether [the] Defendant actually knew, or a reasonable person, under the circumstances, would have known, that the Complainant was unable to consent.  The defendant is not guilty of this crime if he actually and reasonably believed that the Complainant was capable of consenting to sexual intercourse even if that belief was wrong."  (Emphasis added.)

proceeding on the theory that "the defendant compelled the victim's submission by use of physical force; nonphysical, constructive force; or threat of force." Id. at 729. The court did acknowledge, however, that a mistake of fact defense as to consent might be appropriate in "a future case where a defendant's claim of reasonable mistake of fact is at least arguably supported by the evidence." Id. at 732.

Subsequently, in Blache, 450 Mass. at 593-595, the court considered whether a defendant charged with raping someone incapable of consenting to intercourse due to intoxication was entitled to an instruction on mistake of fact. The court declined to adopt a rule that would mandate the mistake of fact instruction in such a situation. See id. at 593-594. However, it acknowledged that the potential for a defendant's reasonable mistake as to consent could increase "in situations where the prosecution is not required to prove the use of force beyond that necessary for penetration" -- such as where the prosecution's theory is that "the complainant lacked the capacity to consent." Id. at 594, citing Lopez, 433 Mass. at 728-729. The court held that, in those situations, "the Commonwealth must prove that the defendant knew or reasonably should have known that the complainant's condition rendered her incapable of consenting to the sexual act," and provided a

proposed instruction.[3,4]  Id. at 594-595.  See Commonwealth v.

Kennedy, 478 Mass. 804, 810-811 (2018); Commonwealth v. Butler,

97 Mass. App. Ct. 223, 230-236 (2020).

---

[3] The model instruction set forth by the Supreme Judicial Court in Blache, 450 Mass. at 595 n.19, reads in full:

"In this case, there has been evidence that the complainant [had consumed alcohol; had consumed drugs; was unconscious; etc.].  If, because of the consumption of drugs or alcohol or for some other reason (for example, sleep, unconsciousness, mental retardation, or helplessness), a person is so impaired as to be incapable of consenting to sexual intercourse, then intercourse occurring during such incapacity is without that person's consent.

"If you find that the Commonwealth has proved beyond a reasonable doubt that the complainant was so impaired as to be incapable of consenting as I have just described, and if you further find that the Commonwealth has proved beyond a reasonable doubt that the defendant knew, or reasonably should have known, that the complainant's condition rendered her [or him] incapable of consenting, then the Commonwealth has proved the element of lack of consent, and, on the element of force, the Commonwealth need only prove that the defendant used the degree of force necessary to accomplish the sexual intercourse -- that is, to effect penetration.

"However, if the Commonwealth has not proved that the complainant lacked the capacity to consent, or if the Commonwealth has not proved that the defendant knew or reasonably should have known of such incapacity, then in order to find the defendant guilty of rape, you must find that the Commonwealth has proved the elements of lack of consent and force as I have defined these elements for you earlier."

[4] The Superior Court model jury instruction on rape is "based closely on the instruction promulgated by the Supreme Judicial Court in Commonwealth v. Blache, 450 Mass. 583, 595 n.19 (2018)."  Model Jury Instructions on Rape 4 n.16 (2021), http://www.mass.gov/doc/superior-court-model-criminal-jury-instructions-rape-word/download [https://perma.cc/YJ6Y-9627].

The judge here instructed the jury substantially in
accordance with the instruction promulgated in Blache, 450 Mass.
at 595 n.19, by stating,

> "If you find that the complainant was so impaired as to be
> unable to consent, then you have to decide whether the
> Commonwealth has proved that the defendant knew or
> reasonably should have known that.  To decide this, you
> must consider whether the defendant actually knew or a
> reasonable person under the circumstances would have known
> that the complainant was unable to consent."[5]

In essence, the instruction that the judge gave to the
jury, that the Commonwealth was required to prove that the
defendant actually knew, or reasonably should have known, of the
victim's incapacity to consent, encompasses the substance of the
instruction requested by the defendant:  that "he actually and
reasonably believed that the [c]omplainant was capable of
consenting to sexual intercourse even if that belief was wrong."

---

The model jury instructions were drafted by a committee of
Superior Court judges.  See Introduction to Superior Court Model
Jury Instructions, https://www.mass.gov/guides/superior-court-
model-jury-instructions#-introduction- [https://perma.cc/J73S-
Y9TE].

[5] This instruction has two alternative elements of
knowledge.  The first is the defendant's actual knowledge of the
victim's incapacity and the second is that the defendant
reasonably should have known of the victim's incapacity -- "a
mix of subjective and objective components."  Commonwealth v.
Mountry, 463 Mass. 80, 91 (2012).  "The subjective component
focuses on the defendant's . . . knowledge [and t]he objective
component focuses on what the average prudent person possessing
the defendant's knowledge would have understood regarding the
victim's incapacity."  Id.

"A trial judge is not required to instruct the jury in the terms requested by a defendant so long as the substance of the requested instructions is adequately covered." Commonwealth v. Sinai, 47 Mass. App. Ct. 544, 547 (1999). That is the case here, and there was no error in the judge declining to give the defendant's requested instructions.

The defendant also requested that the jury be instructed that the victim had to be "totally incapable of consenting to sexual intercourse" at the time of the event, as opposed to simply "incapable" of consenting.[6] The judge's instructions comported with Blache, 450 Mass. at 595 n.19. Thus, we find no error.

The defendant also faults the judge for including a portion of the charge on incapacity that included the phrase, "or for some other reason, for example sleep or helplessness." There was evidence presented that the victim had fallen asleep in the defendant's bed. Therefore, there was no error. See Commonwealth v. Indrisano, 87 Mass. App. Ct. 709, 718 (2015) ("instruction may be given where there is an inference . . . that may be drawn from the evidence" [quotation and citation omitted]).

---

[6] This requested instruction reflects the dissenting opinion in Blache, 450 Mass. at 603 (Spina, J., dissenting). However, we must follow the law presented in the majority opinion. See id. at 595 n.19.

<u>Judgment affirmed</u>.