NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-320

COMMONWEALTH

vs.

DARCYLE J. ROBINSON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A District Court jury convicted the defendant of indecent assault and battery. On appeal the defendant argues that the evidence was insufficient to support his conviction and that the prosecutor made improper statements during her closing argument. We affirm.

Background. We summarize the facts in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). The victim, then a fifteen year old high school sophomore, met the defendant in 2015 after he contacted her through Facebook Messenger. The defendant, then twenty-two years old, had "a lot of the girls in [the victim's] grade" as mutual friends on Facebook and kept his "prom

pictures" visible, misleading the victim to think that he was high-school aged.  After communicating online, the two decided to meet at the victim's home.  Their first meeting was "very short" and included a little bit of conversation and a kiss.

A few weeks later, after communicating further on Facebook Messenger and Snapchat, the defendant and the victim decided to meet again.  The plan was to meet at the victim's home when no one else was there, watch a movie, and talk.  After the defendant arrived, they "sat on the couch for a little bit" and started watching television.  The defendant then asked about sex.  The victim deflected and told the defendant that she was on her period "so that he would stop asking."  The defendant then said that "he wanted oral sex."  The victim did not say anything.  Eventually, the defendant put his arm around the victim, moved her closer to him, and guided her to his lap.  The defendant "pulled out his penis" and put the victim's "head down towards it," and "then once it started, it never stopped."  The victim "wanted to stop at one point," but the defendant "didn't -- he just kept pushing [her] head down."  The defendant's hand stayed on the victim's head the whole time.

The victim "eventually threw up," at which point she "put both of [her] hands down and pushed up," but the defendant "pushed [her] back down."  The defendant "continued to push [the victim's] head down into [her] own throw up" for another fifteen

2

minutes.  Afterwards, the defendant laughed about how his pants were wet from the victim's "throwing up."  The assault left the victim feeling "[v]iolated" and "embarrassed."

Discussion.  1.  Sufficiency of the evidence.  The defendant argues that the Commonwealth failed to prove beyond a reasonable doubt that the victim did not consent to the touching.  Lack of consent is an element of the crime of indecent assault and battery on a person who is at least fourteen, and the Commonwealth has the burden of proof.  Commonwealth v. Shore, 65 Mass. App. Ct. 430, 431 (2006), quoting Commonwealth v. Burke, 390 Mass. 480, 482 (1983).  We view the evidence in the light most favorable to the Commonwealth to determine whether "any rational trier of fact could have found" this element beyond a reasonable doubt.  Latimore, 378 Mass. at 677.

We conclude that the Commonwealth met its burden.  Although "an explicit verbal or physical rebuff" by the victim is not required to prove lack of consent, Shore, 65 Mass. App. Ct. at 433, here, the evidence showed that the victim did physically rebuff the defendant when she tried to push herself away from him after throwing up.  Contrary to the defendant's characterization, this objective manifestation allowed the jury to find that the victim communicated her nonconsent, especially in light of her testimony that she used "both of [her] hands" to

3

try to push herself up, but the defendant "pushed" her back down.  A rational jury could draw the reasonable inference from this testimony that the victim did not consent to the touching.[1]

2.  Closing argument.  The defendant challenges the prosecutor's closing argument on multiple grounds.  Because the defendant did not raise any of these objections at trial, "we review to determine whether . . . the argument [was] improper and, if so, whether [it] created a substantial risk of a miscarriage of justice."  Commonwealth v. Sanders, 101 Mass. App. Ct. 503, 511 (2022), quoting Commonwealth v. Espinal, 482 Mass. 190, 204 (2019).  "Closing arguments must be viewed 'in the context of the entire argument, and in light of the judge's instruction to the jury, and the evidence at trial.'"  Commonwealth v. Braley, 449 Mass. 316, 328-329 (2007), quoting

---

[1] To the extent the defendant argues that, as a matter of law, he made a reasonable mistake of fact as to the victim's consent, that argument fails for several reasons.  First, the Supreme Judicial Court "has neither held nor implied that the [mistake of fact as to consent] defense is available in all indecent assault and battery cases."  Commonwealth v. Butler, 97 Mass. App. Ct. 223, 230-231 (2020).  Second, the defendant did not ask the judge to give an instruction on the defense.  Cf. id. at 230.  Third, the defense is available, if at all, only where the victim's conduct or words "are sufficiently equivocal to have 'led a defendant to reasonably and in good faith believe consent existed where it did not.'"  Id. at 233, quoting Commonwealth v. Lopez, 433 Mass. 722, 731 n.5 (2001).  A rational jury could have rejected that defense where the victim's testimony showed that the defendant used force to continue the assault.  See Butler, supra at 234 ("proof of force 'should negate any possible mistake as to consent'"), quoting Lopez, supra at 729.

4

_Commonwealth_ v. _Colon-Cruz_, 408 Mass. 533, 553 (1990).  We consider each claim of error in turn.

The defendant first contends that the prosecutor shifted the burden of proof by "repeatedly and rhetorically" asking what motive the victim would have to lie.  There is no categorical prohibition against a prosecutor arguing that a witness has no motive to lie, and it is proper for a prosecutor to employ such an argument in response to an attack on the witness's credibility.  See _Commonwealth_ v. _Polk_, 462 Mass. 23, 39-40 (2012).  Here, defense counsel focused in her closing on attacking the victim's credibility, claiming that the victim had fabricated her allegations against the defendant.  The prosecutor was entitled to reply to those attacks, which she did by identifying testimony that diverged from what one would expect if the victim was lying.  For example, the prosecutor pointed to the victim's testimony that she engaged in a consensual kiss with the defendant the first time they met and invited him over again afterwards, and then asked whether the victim would have admitted to doing so if she had a bias or a motive to lie.  Viewed in the context of the entire argument, the prosecutor's statements did not suggest that the "victim's testimony [was] entitled to greater credibility merely by virtue of her willingness to come into court to testify," but rather were proper responses to defense counsel's attacks on the

5

victim's credibility.  Commonwealth v. Helberg, 73 Mass. App. Ct. 175, 179 (2008).  Similarly, the prosecutor's use of rhetorical devices was part of her effort to explain why the victim was credible and did not shift the burden of proof to the defendant.  See Commonwealth v. Rogers, 43 Mass. App. Ct. 782, 786 (1997).

The defendant next claims that two portions of the prosecutor's closing misstated the evidence.  First, he challenges the statement -- "And [the defendant] came over and [the victim] thought [they] were going to watch TV.  But that didn't happen, did it?" -- as inconsistent with the victim's testimony that they "did start watching TV."  But we read the prosecutor's statement to be referring to the victim's testimony that she thought they would "just" watch a movie; read in that way, the statement was based in the evidence.  At worst, it was a "minor deviation" from the testimony on a tangential issue and did not create a substantial risk of a miscarriage of justice.  Commonwealth v. Souza, 492 Mass. 615, 636 (2023).  Second, the defendant argues that the prosecutor misstated that the defendant was "reaching out to the high schoolers" and using "prom pictures of himself from . . . years ago."  But these statements were supported by the victim's testimony that the defendant "messaged [her] on Facebook Messenger," had posted

6

"prom pictures" on his profile, and was Facebook "friends" with "a lot of the girls in [her] grade."  There was no error.

We are also unpersuaded by the defendant's argument that the prosecutor inserted herself into the deliberative process by using first person pronouns.  "Merely using a 'first person pronoun does not interject personal belief into a statement.'"  Commonwealth v. Jenkins, 458 Mass. 791, 797 (2011), quoting Commonwealth v. Espada, 450 Mass. 687, 699 (2008).  Unlike in Commonwealth v. Burts, 68 Mass. App. Ct. 684, 689 (2007), on which the defendant relies, the prosecutor's use of the first person pronoun here did not convey a personal belief or opinion or "blur the boundaries between judge, prosecutor, and jury."  Rather, "[i]t [was] merely a means of involving the jury and suggesting that the prosecutor and the jury review the evidence together."  Jenkins, supra at 797.  This was not improper.  See id.

Nor did the prosecutor appeal to the sympathies of the jurors, as the defendant argues.  We see nothing in the statements identified by the defendant that was excessive or that would have "evoke[d] an emotional rather than an intellectual response."  Commonwealth v. Seng, 436 Mass. 537, 556 (2002).  The statements were also properly grounded in the evidence.  See Commonwealth v. Lyons, 426 Mass. 466, 472 (1998).

Finally, the defendant argues that the prosecutor improperly suggested to the jury that they had a duty to return a guilty verdict.  Although it is "improper for a prosecutor to equate a guilty verdict with justice," the prosecutor did not do so here.  Commonwealth v. Walters, 485 Mass. 271, 293 (2020), quoting Commonwealth v. Carriere, 470 Mass. 1, 20 (2014).  Instead, she argued to the jury that, "if [they] believe[d] what [the victim] said up there," they "have to find [the defendant] guilty."  This was not improper.  See Lyons, 426 Mass. at 471-472.

Judgment affirmed.

By the Court (Shin, Ditkoff & Brennan, JJ.[2]),

Clerk

Entered: November 22, 2024.

---

[2] The panelists are listed in order of seniority.

8